PEOPLE, *for use of* REGENTS OF THE UNIVERSITY OF MICHIGAN, *v.* BROOKS.

1. COLLEGES AND UNIVERSITIES.— REGENTS OF UNIVERSITY—PUBLIC PROPERTY.

> Although under Art. 11, §§ 4 and 5, of the Constitution, the "Regents of the University of Michigan" is a separate entity independent of the State as to the management and control of the University and its property, it is nevertheless a department of the State government and the real estate which it holds or acquires is public property belonging to the State.

2. EMINENT DOMAIN—STATUTES—TITLE OF ACT—CONSTITUTIONAL LAW.

> In condemnation proceedings by the people of the State of Michigan for the use and benefit of the regents of the University under Act No. 236, Pub. Acts 1911, entitled "An act to authorize proceedings by the State to condemn private property for public use," an objection that the title is not broad enough to authorize the enactment of such authority, *held*, without merit; it not being necessary that the various State institutions for which the land is to be used should be designated in the title.

3. SAME — PROCEEDINGS TO CONDEMN LAND FOR UNIVERSITY — APPLICABILITY OF STATUTE.

> Since Act No. 236, Pub. Acts 1911, is apparently the attempt of the legislature to prescribe the proceeding necessary to the exercise of the right of eminent domain given the regents of the University under Art. 13, § 4, of the Constitution, an objection that said statute is not applicable because title to the land is to be taken in the name of the State is without merit; it being subject to the exclusive control and management of the regents, and the vesting of the title in the State being therefore immaterial.

4. SAME—LAND FOR LAWYERS' CLUB—PUBLIC PURPOSE.

> Land acquired by condemnation proceedings by the regents of the University for the erection thereon by an alumnus

As to nature of State university as an incorporated institution belonging to the State, see note in 29 L. R. A. 378.

of a building to house a "Lawyers' Club," to membership in which all members of the law school and all lawyers are eligible, and providing sleeping, study, and dining accommodations for law students, and all profits from its operation to be used for legal research, *held*, to be for a public purpose.

5. SAME—CERTIORARI—DAMAGES AWARDED NOT REVIEWABLE IN AB-SENCE OF RETURN OF EVIDENCE.

On certiorari to review an award in condemnation proceedings, an objection that the jury failed to allow damages to the land not taken cannot be considered where the award was in a lump sum, and the evidence as to the damages is not included in the return.

Certiorari to Washtenaw; Sample (George W.), J. Submitted June 19, 1923. (Calendar No. 30,956.) Decided July 19, 1923.

Condemnation proceedings by the people of the State of Michigan, for the use and benefit of the regents of the university of Michigan, against Raymond P. Brooks and others. From an order confirming an award of the jury, certain defendants bring certiorari. Affirmed.

*John D. Thomas, Walter M. Nelson,* and *Arthur Brown (Henry B. Graves,* of counsel), for appellants.

*Andrew B. Dougherty,* Attorney General, and *Homer S. Quay,* Assistant Attorney General (*Cavanaugh & Burke,* of counsel), for appellee.

MCDONALD, J. This is a review by certiorari of certain condemnation proceedings had in the circuit court of Washtenaw county. An alumnus of the university of Michigan proposed to the regents that he would contribute a million and a half dollars for the construction of a building to be used for law school purposes, and to be known as "The Lawyers' Club."

The regents accepted the proposal and arranged with the State administrative board for the money with which to purchase a portion of two blocks immediately south of the campus as a site for the building. Eleven property owners refused to sell, and it became necessary for the board of regents to endeavor to acquire the title by judicial condemnation. By resolution of November 24, 1922, they declared the taking of this property a public necessity for use of the university and directed the attorney general of the State of Michigan to institute condemnation proceedings. A petition was filed, trial was had, and on February 6, 1923, the jury rendered its verdict, finding a public necessity for the taking of the property and awarding the defendants damages in various amounts, totaling $230,874. The court entered an order confirming the verdict. Six of the property owners accepted the amount awarded them and made deeds to the university. Five are here seeking a review of the proceedings.

The first question presented by the record is stated by defendants in their brief as follows:

"The statute under which the proceedings were brought is unconstitutional, to the extent that it attempts to authorize proceedings in behalf of the regents of the university of Michigan, because the title of the statute is not broad enough to authorize the enactment of such authority."

The proceedings were brought under Act No. 236 of the Public Acts of 1911 (1 Comp. Laws 1915, § 349 *et seq.*), the title of which reads as follows:

"An act to authorize proceedings by the State to condemn private property for public use."

The following provisions of the Constitution of the State of Michigan form the basis of defendants' objections to the title in question:

"No law shall embrace more than one object which shall be expressed in its title." * * * Const. 1908, Art. 5, § 21.

"The regents of the university and their successors in office shall continue to constitute the body corporate known as 'The Regents of the University of Michigan.'" Art. 11, § 4.

"The board of regents shall have the general supervision of the university and the direction and control of all expenditures from the university funds." Art. 11, § 5.

"The regents of the university of Michigan shall have power to take private property for the use of the university in the manner prescribed by law." Art. 13, § 4.

It is argued by the defendants that the title only authorizes proceedings by the State, that "The Regents of the University of Michigan" is a constitutional corporation, independent of the State, separate and distinct in its authority, and, therefore, the title does not indicate that one of the objects of the legislation is the taking of private property by that corporation. While it is true that "The Regents of the University of Michigan," more commonly called the "board of regents," is a separate entity, independent of the State as to the management and control of the university and its property, it is nevertheless a department of the State government, created by the Constitution to perform State functions, and the real estate which it holds, or acquires, is public property belonging to the State, held by the corporation in trust for the purposes of the university which are public purposes. See *Auditor General* v. *Regents of the University,* 83 Mich. 467 (10 L. R. A. 376).

In support of their conception of the legal character of this corporation, counsel for the defendants seem to rely on *Weinberg* v. *Regents of the University,* 97

Mich. 246.    A careful reading of the opinion of
Justice GRANT in that case will show that the decision
is based solely on the constitutional right of the
regents to the absolute and exclusive control of all
university property.    That right has been recognized
by every judicial decision of this court in which
this question has been considered.    It has be-
come the well settled purpose and policy of the law.
But it has not been held that the university was not
a State institution, or that the real estate which the
regents are authorized to acquire and hold for uni-
versity purposes is not property of the State.    The
following cases are of interest on the history of the
university and the constitutional powers and duties
of its board of regents. *Regents of the University*
v. *Board of Education,* 4 Mich. 213; *Regents of the
University* v. *Detroit Young Men's Society,* 12 Mich.
138; *Sterling* v. *Regents of the University,* 110 Mich.
369 (34 L. R. A. 150) ; *Regents of the University* v.
*Auditor General,* 167 Mich. 444.

With this understanding as to the character of the
corporation, it will plainly be seen that there is here
no constitutional objection to the title of the act in
question.    The one general purpose as expressed in
the title and in the body of the act is the same, viz.,
the condemnation of private property for public use.
Every section is germane to the object expressed in
the title.    It is not necessary for compliance with
the constitutional requirement that the various in-
stitutions for which the land is to be used should be
designated in the title.    In *Loomis* v. *Rogers,* 197
Mich. 265, this court, speaking through Mr. Justice
STEERE, said:

"If the act centers to one main general object or
purpose which the title comprehensively declares,
though in general terms, and if provisions in the
body of the act not directly mentioned in the title are

224—Mich.—4.

germane, auxiliary or incidental to that general purpose, the constitutional requirement is met.

"A title is but a descriptive caption, directing attention to the subject-matter which follows."

We think the general object of the act under which this proceeding is brought is sufficiently expressed in its title.

It is further urged by counsel for the defendants that though the act be constitutional in respect to its title, it does not include the board of regents, because it provides that the judgment of confirmation vests the title of the land in the State instead of in the corporation, and requires the proceeding to be brought in the name of the State. In this regard it is the claim of counsel that only the regents in their corporate capacity can hold title to the property, and that the Constitution gives the corporation the right of eminent domain in its own name. It will be observed, however, that this right is to be exercised by the regents in "the manner prescribed by law." The act in question is apparently the attempt of the legislature to prescribe the proceeding necessary to the exercise of this power. We see no constitutional objection to the provision requiring the suit to be prosecuted in the name of the State. It is the manner prescribed by law. The money for the payment of this property was furnished by the State, and deposited in court by the administrative board for the payment of the judgment. The title to the land was taken and is held by the State, by consent of the board of regents, for the use and benefit of the university. The buildings to be erected thereon are for the use of the people, under the exclusive management and control of the regents. The State alone may not sell it or divert it from the use for which it was acquired. The regents could not sell it if the title had vested in their corporation. It is the public property of the State

devoted to a particular public purpose, and whether held by the State or by the regents in their corporate capacity, it is still subject to the absolute control of the latter, and that is all the Constitution requires. Our attention has not been called to any law prohibiting the State of Michigan from holding title to lands for the use and benefit of the university. Inherently it may do so. The right of the regents of the university, however, to take and to hold title in their corporate capacity for the purposes of the university is unquestioned, and, though it is not a constitutional right, if the exercise of that right be necessary to the absolute management and control of the property, to permit the State to take it would be a violation of the spirit and purposes of the provisions of the Constitution, as construed by this court. But as affecting the question of control, it would seem to be immaterial whether the title of real estate be held by the regents or by the State. The mere holding of the title without the right to sell or divert, or to manage or control, could not interfere with the present constitutional powers of the board of regents. It is held by the State subject to the right of the regents, to exclusively control and manage it. There is no constitutional objection to the requirement that title to the land shall vest in the State. If the State may hold the title, the law in question is applicable to proceedings by the regents for the judicial condemnation of land for use of the university. It was plainly so intended by the legislature, and, we think, in its enactment, due regard was given to the constitutional rights and powers of the regents. They are not here questioning it.

The third objection raised by defendants in their brief is "That the use for which the property is being taken is not a public use." The following letter from the donor, supplemented by the testimony of university

officials, clearly shows the necessity of the proposed building for use of the students attending the law school:

"To the Board of Regents,
    University of Michigan, Ann Arbor, Michigan.
    "Dear Sirs:—If agreeable to you, I will erect on the two blocks on South University avenue, between South State street and Tappan avenue, a law students' combined club and dormitory building, with the same advantages as you have extended to other buildings, namely, the university to furnish free heat, light, and power. The building is to be known as 'The Lawyers' Club,' to be governed by five governors, consisting of the dean of the law faculty (who shall be president), and four other governors to be selected by the board of regents from the law faculty. All members of the law school are to be eligible to membership in the proposed club, subject to such conditions as the club authorities may prescribe. All lawyers whether residing in the State or not, and whether previously connected with the university or not, shall be eligible to membership, subject to being elected by the governors. All occupants of the building shall be members of the club and shall pay annual dues as the governors may determine, and are to be selected by the dean of the law school from the senior law class. Members of the club not living in the building shall also pay such annual dues as the governors may determine. Going prices shall be charged for rooms and board.

"The proposed building will furnish sleeping and study rooms for one hundred and fifty law students and dining accommodations for three hundred.

"All dues and all profits from the operation of the building shall be used exclusively for legal research work, to be expended from time to time as the governors may deem best. This legal research work will render possible the study of comparative jurisprudence and legislation, National and State, and also of foreign countries, ancient and modern. Such work should be of use in proposed legislation, and besides leading to the production of reliable law treatises and studies, would help to systematize the law as a science.

The European plan of giving leisure time to professors to pursue their studies and produce original works, may well be applied in America to professors of law, who at present are absorbed too exclusively in classroom work.    A legal research fund could be used to pay part of their salaries, thus giving them time for original research.

"The character of the legal profession depends largely on the character of the law schools.    Real lawyers were never needed more than now, and they have grave responsibilities.    There never was a time when they had so much power as now.    It will be for the lawyers to hold this great republic together, without sacrifice of its democratic institutions.

"Yours very truly, .

. . . . . . . . . . . . . . . . . . . . . .

"April 25, 1922."

The claim that the property to be acquired is not for public use is so plainly without merit that we do not deem it necessary to enter into any extended discussion of it.

The final objection to the proceeding relates to the failure of the jury to allow Rose T. Lueck any damages for the impairment of the value of the east 44 feet of her lot not included in the petition for condemnation. Under proper instructions the court left this question to the jury.    The verdict made no reference to damages to the east 44 feet, but awarded a lump sum of $14,000.    The evidence taken as to damages, which counsel say is undisputed, is not included in the return, and we are therefore unable to determine the question raised.

After careful consideration of the various questions presented by this record, we are convinced that there is no ground for issuing the writ of certiorari.    The writ heretofore issued will be dismissed, with costs to the plaintiff.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.