## REID v. UNIVERSITY OF MINNESOTA.
### Civ. 6834.

United States District Court
N. D. Ohio, W. D.
Sept. 30, 1952.

Harris & Sell, Toledo, Ohio, for plaintiff.

J. A. A. Burnquist, Lowell J. Grady, St. Paul, Minn., for defendant.

KLOEB, District Judge.

The plaintiff in this case resides in this judicial division and conducts his business in Toledo, Ohio. He alleges in his conplaint that the defendant is a corporation organized and existing by virtue of the laws of the State of Minnesota and that it maintains its principal office at Minneapolis, Minnesota.

The action is brought under the provisions of Sections 13 and 13a of Title 15 United States Code Annotated, and defendant is charged with price discrimination against the plaintiff who is engaged in the business of being a wholesale jobber of books. Process was served upon one W. T. Middlebrook, Vice President, at the Administration Building, University of Minnesota campus under the authority of Section 22 of Title 15 United States Code Annotated, which reads as follows:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Defendant moves to quash the service of summons and to dismiss the complaint on four separate grounds. Grounds 1 and 3 read as follows:

"1. That the University of Minnesota, named defendant herein, is not a corporation organized and existing under and by virtue of the laws of Minnesota, and, therefore, is not subject to service of process under Section 12 of the Clayton Act (15 U.S.C.A., Section 22), and that W. T. Middlebrook, the person upon whom service of summons was made, is not a Vice President of the University of Minnesota or one authorized to receive the service of summons for the University of Minnesota, or upon whom service of summons herein can be made according to law."

"3. That this court has no jurisdiction over the Regents of the University of Minnesota, since said corporation is an inhabitant of the State of Minnesota, cannot be found in the Northern District of Ohio, and does not transact business in said District, within the meaning of Sections 15 and 22 of Title 15 of United States Code Annotated."

Grounds 2 and 4 are based upon the fact that the "Regents of the University of Minnesota" is a corporation created by the Constitution of the State of Minnesota and as such is a corporate agency of the government of the sovereign State of Minnesota and, therefore, is not now subject to service of process within the Northern District of Ohio, and is not a person subject to the regulations and restrictions of Sections 13 and 13a of Title 15 United States Code Annotated.

The Court is of the opinion that the motion should be sustained as to grounds 1 and 3.

█ It is quite apparent from the unrefuted affidavit of W. T. Middlebrook that there is no such corporate entity as the "University of Minnesota, Minneapolis, Minnesota", defendant herein. It appears from the affidavit that, in 1851, the legislature of the territory of Minnesota established an institution under the name and style of the "University of Minnesota" and vested the government of such university in a board of twelve Regents to be elected by the legislature of the territory; that the Regents of the university and their successors in office were to constitute a body corporate with the name and style of the "Regents of the University of Minnesota", with the right of suing and being sued and of contracting and being contracted with; that, upon the admission of the territory of Minnesota to statehood a constitution was adopted, and that Section 4 of Title 8 of the Constitution provides as follows:

"The location of the University of Minnesota, as established by existing laws, is hereby confirmed, and said institution is hereby declared to be the University of the State of Minnesota. All the rights, immunities, franchises

and endowments heretofore granted or conferred are hereby perpetuated unto the said university; and all lands which may be granted hereafter by Congress, or other donations for said university purposes, shall vest in the institution referred to in this section."

It appears further from the affidavit that, on July 16, 1925, the Regents of the University of Minnesota established a University of Minnesota Press, to be in charge of a director and a committee of five from the faculty, to be appointed by the President of the Regents of the University of Minnesota as an executive committee, in charge of all matters pertaining to the Press.

It thus appears that there is no corporation organized and existing by virtue of the laws of the State of Minnesota known as the "University of Minnesota"; that, under the Constitution, an institution designated the "University of the State of Minnesota" was recognized and that there does exist a body corporate designated the "Regents of the University of Minnesota", and that this constitutional corporation directs the activities of the University Press.

The Court is of the opinion that ground 3 of the motion should be sustained, because the proofs do not bear out the assertion that the Regents of the University of Minnesota transacted business in the Northern District of Ohio during the years in question (September 28, 1942, to June 27, 1952), within the meaning of Sections 15 and 22 of Title 15 United States Code Annotated.

The unrefuted affidavit of Helen L. Mac-Donald, Sales Manager of the University of Minnesota Press, establishes that the Press at no time during the period covered in the complaint maintained an office or place of business, storage or warehouse facilities or supply of materials to be sold by the Press, and that no bank deposits or other property or assets of the Press were located in the Northern District of Ohio; that at no time during the period in question did the Press have any employees, officers or agents located or resident in the Northern District of Ohio; that the Press

since the year 1940, and up to the year 1950, empowered one George W. Stewart, of New York, to solicit orders for all tradebooks and publications of the Press, and that the said Stewart did solicit orders in the Northern District of Ohio for which he received as compensation a commission of 12½% on all orders for tradebooks and publications secured by him from book stores; that, prior to January 1, 1946, the said Stewart called on certain accounts in the City of Toledo, including plaintiff, and that since January 1, 1946, he has not called at the City of Toledo but has and does call at the Cities of Cincinnati, Columbus, Dayton and Cleveland; that the said Stewart, when he obtained or obtains an order for the Press of books or other publications, forwards the same to the Press at Minneapolis, where the order is accepted or rejected; that he has no authority to accept orders or make contracts for the sale of books and publications or otherwise bind the University of Minnesota Press, nor does he do more than take orders and forward the same for acceptance to the Press; that, if and when the orders are accepted, the books are shipped directly to the buyer.

It appears further from the affidavit that the total net sales in the Northern District of Ohio for the period July 1, 1945, through June 30, 1952, amounted to $6439.14, and that of this sum the total net sales to plaintiff amounted to $1571.35, that no sales were made to plaintiff during the years 1951 and 1952, and that the net sales for the year 1950 amounted to $2.22.

It appears further from the affidavit that the total net sales of the University of Minnesota Press within the United States for the period July 1, 1945, through June 30, 1952, amounted to the sum of $693,085.87.

It thus appears that the business done by the University of Minnesota Press in the Northern District of Ohio during the period in question was not of a substantial nature.

In the case of Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, beginning at page 372, 47 S.Ct. 400, at page 403, 71 L.Ed. 684, we find the following:

"* * * And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process, if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * *"

In the case of Lechler Laboratories, Inc., v. Duart Mfg. Co., Inc., D.C., 35 F.Supp. 839, we find, on page 840, the following:

"* * * The corporation must, however, be transacting business within the district of a 'substantial character' and the mere fact that some business is done is not enough. Eastman Kodak Co. v. Southern [Photo Materials] Co., supra; Seaboard Terminals Corp. v. Standard Oil Co. of New Jersey, D.C., 24 F.Supp. 1018; Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation, 1 Cir., 46 F.2d 623."

In the case of Zimmers v. Dodge Brothers, Inc., D.C., 21 F.2d 152, paragraph 1 of the syllabus reads as follows:

"What constitutes 'doing business' within the district, within Judicial Code, § 48 (Comp.St. § 1030), relating to jurisdiction and service of process in suits for infringement of patents, depends on facts of the particular case, in view of section 24 (Comp. St. § 991), Anti-Trust Act, § 7 (Comp. St. § 8829 [15 U.S.C.A. § 15]), and Clayton Act, § 12 (Comp.St. § 8835k [15 U.S.C.A. § 22])."

Paragraph 6 of the syllabus reads in part as follows:

"Where it is doubtful whether foreign corporation is doing business within the district, so as to give federal District Court jurisdiction of patent infringement suit against it under Judicial Code, § 48 (Comp.St. § 1030), it is better that parties be remitted to the district where there is no doubt as to jurisdiction before expensive and protracted litigation has been had."

The Court is of the opinion, from all the facts and circumstances in this case, that the University of Minnesota Press did not, during the years in question, transact business of any substantial character in the Northern District of Ohio, and that it is preferable to require the plaintiff, if he so desires, to institute the suit in a district where there is no doubt as to jurisdiction before expensive and protracted litigation has been had.

Grounds 2 and 4 of the motion raise the question of the right or the intention of the Congress of the United States to impose the regulations of the Anti-Trust Acts upon the sovereign States of the Union.

The "Regents of the University of Minnesota" is a constitutional corporation created to carry out State purposes and the acts of the Regents are, therefore, the acts of the State of Minnesota. The University of Minnesota Press, being a creature of the Regents of the University of Minnesota, is, therefore, an agency of the State of Minnesota and the acts of the Press are the acts of the State of Minnesota. State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N.W. 951.

In the case of Parker, Director of Agriculture v. Brown, 317 U.S. 341, we find, beginning in the last paragraph of page 350, 63 S.Ct. 307, 313, 87 L.Ed. 315, the following:

"* * * We find nothing in the language of the Sherman Act or in its history which suggests that its pur-

pose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

"The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state. The Act is applicable to 'persons' including corporations, § 7, 15 U.S.C.A., and it authorizes suits under it by persons and corporations. § 15. * * *"

In the case before us we do not have an action to restrain under a charge of a combination or a conspiracy, but we have an action by an individual who charges price discrimination against him by a corporation. There can be no doubt but that the Congress of the United States would be reluctant to attempt any curtailment of the activities of the various States or agencies thereof, but we do have an instance here, charged in the complaint, and accepted by the Court for the purposes of this motion as being true, that this agency of the State operated as a business corporation in the production and interstate sale and distribution of its products just the same as did other business corporations engaged in the production and interstate sale and distribution of books operating in the same field as did the "Press".

Whether the "Press", as an agency of the State of Minnesota, should be exempted from the operation of Sections 13 and 13a of Title 15 United States Code Annotated when it engages in a business of the character and to the extent here engaged in, presents a question that this Court does not feel called upon to determine in view of the conclusions arrived at under grounds 1 and 3 of the motion. The question of whether the Anti-Trust Acts apply to this sovereign State under the facts and circumstances as we have them here is one that may well be inquired into should the plaintiff choose to bring suit in the proper district in the State of Minnesota.

Without passing upon grounds 2 and 4 of the motion, the Court sustains the motion upon grounds 1 and 3. The service of summons is ordered quashed and the bill of complaint dismissed.

An order is drawn accordingly.