**UNIVERSITY OF ALASKA, Petitioner,**

**v.**

**NATIONAL AIRCRAFT LEASING, LTD., and Alaska International Air, Inc., for themselves and for insurers at Lloyds of London and certain other insurance underwriters, Respondents.**

**No. 2365.**

Supreme Court of Alaska at Fairbanks.

May 30, 1975.

Howard P. Staley, of Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for petitioner.

William B. Rozell, of Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, for respondents.

## OPINION

Before RABINOWITZ, C. J., CONNOR, J., and DIMOND, Justice Pro Tem.

DIMOND, Justice Pro Tem.

Within certain limitations, one is authorized by statute to sue the State of Alaska on a contract, quasi-contract or tort claim.[1] One of these limitations is that the action must be tried by the court; under AS 09.-50.290 a trial by jury is not allowed in actions against the state.[2]

It is this statutory condition upon the state's waiver of sovereign immunity which gave rise to this petition for review. The petitioner, University of Alaska, has been sued for damages by the respondents, National Aircraft Leasing, Ltd., and Alaska International Air, Inc. The suit arose when an aircraft being operated by Alaska International Air, Inc., was damaged in attempting to land on an experimental float-ing ice air strip maintained by the University. The University demanded a trial by jury under Civil Rule 38(b).[3] Applying AS 09.50.290, however, the trial judge refused to grant a jury trial on the grounds that the University and the state are the same for purposes of AS 09.50.250–.300 which set forth the conditions under which suits against the state may be maintained. The court's reasoning was that the protections afforded the state by AS 09.-50.250–.300 apply to all entities that are similarly situated, e. g., possessing publicly owned assets and dependent upon the taxpayers for support. The petitioner asserts that the trial court erred in this ruling.

This matter is before us, not on appeal from a final judgment, but on petition for review from an interlocutory order. In the exercise of our discretion we have granted review at this stage of the proceedings in order to avoid the possibility that postponing review of this question until the time for a normal appeal could result in the necessity of a new trial. The unnecessary delay and expense attendant upon such a possibility can be avoided by

1. AS 09.50.250–.300.

2. AS 09.50.290 provides:
   Actions against the state under §§ 250–300 of this chapter shall be tried by the court without a jury.

3. Civil Rule 38(b) provides:
   (b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand shall be made in a separate written document signed by the party making the demand or by his attorney.

deciding the question now.[4] Moreover, the issue here presented is of sufficient importance to "justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court . . . ."[5]

All governmental authority in Alaska originates in the people of this state and is founded upon their will only.[6] The people formulated the basic government of our state by ratifying the Alaska Constitution which was drafted by delegates elected by the people to represent them at a constitutional convention. It is the Alaska Constitution, therefore, that forms the basis for the fundamental government of this state.

Article VII of the constitution frames the mandate whereby the health, education and welfare of the people are provided for. Section 1 of article VII directs the legislature to establish and maintain by general law a system of public schools open to all children of the state, and allows the legislature to provide for other public educational institutions. Section 2 of article VII, the import and construction of which is crucial to the resolution of this case, provides:

> The University of Alaska is hereby established as the state university and constituted a body corporate. It shall have title to all real and personal property now or hereafter set aside for or conveyed to it. Its property shall be administered and disposed of according to law.

The question before us is whether the University of Alaska constitutes in function and character such an arm or instrumentality of the state as to bring it within the scope of those statutes which govern the conditional waiver of sovereign immunity in this state. If it is, then the ruling of the trial court on the applicability of AS 09.50.290 to this action must be affirmed.

By constitutional provision, the University as a corporate entity holds title to all property which is conveyed or set aside to it. The disposition and administration of such property, however, is made expressly subject to a degree of legislative control. The board of regents is empowered by the constitution to "govern" the university. Nevertheless it is obliged to formulate policy as well as appoint its chief executive "in accordance with law." The regents, moreover, hold office by virtue of the approval of both the governor and both houses of the legislature.[7]

Through legislative enactments, the University enjoys a considerable degree of statutory independence. Not only does the board of regents have the constitutional authority to appoint the president of the University, formulate policy, and act as the governing body for the institution, but the legislature has specifically empowered it to fix the president's compensation and the compensation of all teachers, professors, instructors and other officers; to confer such appropriate degrees as it may determine; to have care, control and management of all the real and personal property and all money of the University; and to

---

4. Appellate Rule 23(e) provides in part that an aggrieved party may petition this Court for review of nonappealable orders
   [w]here postponement of review until normal appeal may be taken from a final judgment . . . will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

5. Appellate Rule 24(a)(1). *See, e. g.,* Peter v. State, 531 P.2d 1263 (Alaska 1975).

6. Alaska Const. art. I, § 2 provides:
   All political power is inherent in the people. All government originates with the people, is founded upon their will only, and is instituted solely for the good of the people as a whole.

7. Alaska Const. art. VII, § 3 provides:
   The University of Alaska shall be governed by a board of regents. The regents shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session. The board shall, in accordance with law, formulate policy and appoint the president of the university. He shall be the executive officer of the board.

receive, manage and invest money or property obtained from sources other than the state legislature or by way of federal appropriation.[8] In addition, the legislature has provided that title and control or possession of land and personal property, other than monies, which are devised, bequeathed or given to the University, shall be taken by the University in its corporate capacity acting through the regents or an authorized agent, and shall be entered in the perpetual inventory of the University.[9] The board of regents is also authorized to execute leases for mining, agriculture, or other purposes to the lands granted by Congress to the University for the benefit of an agricultural college and school of mines.[10] In addition, the board of regents may select the lands granted to Alaska by the Act of Congress approved January 21, 1929, and may sell or lease such lands.[11]

But the University is also subject to some executive and legislative control. As mentioned, the constitution provides that the regents of the University shall be appointed by the governor, subject to confirmation by the legislature.[12] Furthermore, as has been pointed out, the formulation of university policy as well as the administration and disposition of University property are made subject to legislative enactment. At the beginning of each regular session of the legislature the board of regents is required to make a written report to the legislature showing the condition of University property, all receipts and expenditures, and the educational and other work performed.[13] In addition, the board must make an annual report to the governor which shall include a statement of all trust funds the University possesses.[14]

All monetary gifts, bequests or endowments received for the University expansion program or other uses must be turned over to the Department of Revenue where they are placed in a separate fund.[15] This fund, denominated as a trust fund, shall also include all monies derived by the University from the sale or lease of lands granted by act of Congress. These funds shall be invested by the Department of Revenue in interest-bearing securities as approved by the governor.[16] The proceeds from the sale or lease of lands granted to Alaska for University purposes by acts of Congress shall be deposited in the state treasury by the board of regents.[17] The governor is the person authorized to make all certificates required by law or by regulations of the federal Departments of Agriculture or Interior to entitle the state to grants of money for the benefit of state colleges of agricultural and mechanical arts authorized under acts of Congress.[18]

Finally, there is the matter of financing the operations of the University from state funds. In 1974 the total funding of the University of Alaska was over 41 million dollars. Approximately 65 per cent of that amount, 26½ million dollars, was appropriated by the legislature from the state's general fund.[19]

■ Despite the degree of constitutional as well as statutory autonomy the University clearly possesses, we are of the opinion that it must be considered to be an integral part of the state educational system mandated by the constitution. In its constitutional status it stands as the single governmental entity which was specifically created by the people to meet the statewide need for a public institution of higher education. In this light, the University must be regarded as uniquely an instrumentality of the state itself. Unlike other public educational institutions created to meet the

8. AS 14.40.170; AS 14.40.250.

9. AS 14.40.280.

10. AS 14.40.350.

11. AS 14.40.360.

12. Note 7 *supra.*

13. AS 14.40.190.

14. AS 14.40.370.

15. AS 14.40.280.

16. AS 14.40.400.

17. AS 14.40.360.

18. AS 14.40.450.

19. § 17, ch. 147, SLA 1974.

needs of local areas, it exists constitutionally to act for the benefit of the state and the public generally.

We reach this conclusion not only from article VII of the constitution, which we construe to be the expression of the will of the people of this state that there shall be an institution of higher learning within the scope of the constitutional mandate providing for public education, but also from the degree of control over the affairs of the University which is exercised by the executive and legislative branches of our government, and from the financial dependence the University has upon the state.

It is true that the constitution has established the University as a body corporate.[20] The fact that the University has had conferred upon it the status of a juristic person is not dispositive, however, of our ruling in this case. There are several reasons why this structural approach may have been taken.[21] It may have been created as a corporation so as to simplify its transactions with the federal government in accepting grants of lands, and to facilitate its dealings with other persons in leasing and selling the lands it acquires or in conducting general business activities. Also, this corporate status may have been chosen in order to shield the individual members of the board of regents from personal liability in actions which might lead to a judgment for money damages against the University.

Whatever the framers' intentions, we have in the past recognized that corporate status alone is not determinative of the question of whether or not an entity performing public or governmental functions is an agent or instrumentality of the state.

In Alaska State Housing Authority v. Dixon, 496 P.2d 649, 651 (Alaska 1972), we concluded that ASHA was a "state agency" within the intendment of the Administrative Procedure Act even though it was created as a "public corporate authority." In *Dixon* we also construed the holding in Bridges v. Alaska Housing Authority, 349 P.2d 149 (Alaska 1959), to the effect that the Alaska Housing Authority was not the state for purposes of eminent domain proceedings, to mean only that that agency was not "identical" with the state.[22]

The same general conclusion was reached in DeArmond v. Alaska State Development Corp., 376 P.2d 717 (Alaska 1962). There we held that the act creating ASDC as an "instrumentality of the state within the Department of Commerce" was constitutional even though it also provided that the agency was a corporation with a "legal existence independent of and separate from the state." We concluded that this latter provision was nothing more than "a declaration of the legal relationship that most corporations have with respect to their creators."[23] Such corporate status did not have the effect of removing ASDC from the Department of Commerce.[24]

Although these decisions are not wholly dispositive of the question before us,[25] they are indicative of the fact that this Court has not been disposed to treat independent corporate status as sufficient to require the conclusion that a given entity is not in fact part of the State of Alaska. We recognize that the guideposts for such an inquiry are to be found more in political and functional realities than in organizational formali-

---

20. Alaska Const. art. VII, § 2.

21. Unfortunately the records from our constitutional convention offer no help in disclosing the thinking of the drafters on this matter.

22. 496 P.2d at 651 n. 4.

23. 376 P.2d at 724.

24. *See also* Walker v. Alaska State Mortgage Ass'n, 416 P.2d 245 (Alaska 1966), where the

reasoning of *DeArmond* was followed in concluding that ASMA was not by virtue of its independent corporate nature an agency not within the Department of Commerce.

25. We are aware of the crucial fact that each of these cases dealt with a corporate entity which had been specifically declared in its organic act to be "within" a given executive department of the state. That is not the case here.

ties. This approach is in harmony with that of leading authorities in the area.[26]

Other courts have reached various conclusions as to the status and standing of their state universities with respect to the issue of sovereign immunity; there is a marked split of authority on the question.[27] There is, nevertheless, sound authority for the proposition that even where created as a corporate entity, a state university, because of its relation to the state, is a mere agent or instrumentality of the state to carry out its public purpose.[28] Morevoer, there are two jurisdictions whose decisions on this question are particularly persuasive since they have considered the unique status of universities created as constitutional corporations.

In People, for Use of Regents of University of Michigan v. Brooks, 224 Mich. 45, 194 N.W. 602 (1923), the Supreme Court of Michigan observed that the regents of the University of Michigan had been created as a "constitutional corporation." The court concluded that for the purposes of a statute authorizing proceedings by "the state" to condemn private property for public use, this constitutional corporation, although a separate entity independent from the state as to the management and control of the University, was nevertheless "a department of the state government, created by the Constitution to perform state functions . . . ."[29]

In a later case, the Court of Appeals of Michigan, in Branum v. State, 5 Mich. App. 134, 145 N.W.2d 860 (1966), considered the status of the University of Michigan's board of regents with respect to that state's statutory waiver of governmental immunity. It was concluded that the statute was applicable to the board even though, as a constitutional corporation, it was not subject to legislative control as to many university affairs. In so doing, the court specifically held that

[i]n spite of its independence, the Board of Regents remains a part of the government of the state . . . . The University of Michigan is an independent branch of the government of the state of Michigan, but it is not an island. Within the confines of [its exclusive constitutional powers] it is supreme. Without these confines, however, there is no reason to allow the Regents to use their independence to thwart the clearly established public policy of the people of Michigan [waiving governmental immunity to tort actions].[30]

A United States district court, considering the unique constitutional status of the board with respect to its immunity from suit under maritime law, concluded that the University of Michigan's board of regents was "a unique constitutional corporation . . . similar to a department of the

---

26. See, e. g., 1 K. Davis, Administrative Law § 1.01, at 1 (1958) (where the author recognizes that administrative agencies may be designated by many names, including that of "corporation"), as quoted in Dixon, 496 P. 2d at 651.

27. See generally Annot., 33 A.L.R.3d 703, § 4[d] (1970) ; Annot., 86 A.L.R.2d 489, § 7 (1962) ; Annot., 160 A.L.R. 7, § 4 (1946) ; 15 Am.Jur.2d Colleges and Universities §§ 7, 15, 35 (1964) ; 72 Am.Jur.2d States, Territories and Dependencies §§ 104–106 (1974) ; 14 C.J.S. Colleges and Universities §§ 2, 18 (1939).

28. See, e. g., Wolf v. Ohio State University Hospital, 170 Ohio St. 49, 162 N.E.2d 475

(1959) (recognizing that the state university and its hospital are "instrumentalities of the state" which may not be sued until the legislature enacts statutes determining "the manner in which such suits may be brought against the state.") ; University of Maryland v. Maas, 173 Md. 554, 197 A. 123 (1938) ; State v. Miser, 50 Ariz. 244, 72 P.2d 408, 412 (1937) (deciding that the fact that the University of Arizona is incorporated "does not make it any of the less an arm, branch or agency of the state for educational purposes").

29. 194 N.W. at 603.

30. 145 N.W.2d at 862.

state" which consequently enjoyed the immunity of the state from such suits.[31]

The character of the University of Minnesota's board of regents, also created as a "constitutional corporation," has been viewed by the supreme court of that state in this same general light. In State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N.W. 951 (1928), it was decided that while the legislature could not subject the board to executive control in matters reserved by the state constitution to the board alone, the board was nevertheless

> an agency of government to accomplish a state purpose, just as a municipal corporation, however independent it may be under its charter, is an agency of [local] government for the accomplishment of local purposes.[32]

More recently, a United States district court observed in Reid v. University of Minnesota, 107 F.Supp. 439, 442 (N.D.Ohio 1952), that

> [t]he "Regents of the University of Minnesota" is a constitutional corporation created to carry out State purposes and the acts of the Regents are, therefore, the acts of the State of Minnesota.

We conclude from the foregoing that the corporate status of the University of Alaska under the Alaska Constitution does not militate against our conclusion that the University falls within the ambit of the language of AS 09.50.250–.300 which governs suits against the State of Alaska. Furthermore, this Court's actions in the recent case of University of Alaska v. Chauvin, 521 P.2d 1234 (Alaska 1974), do not, as is urged by petitioner, require a contrary ruling.[33]

Petitioner also argues that the University is not subject to AS 09.50.250–.300 since the legislature has chosen to confer upon it the statutory power to "sue and be sued" in its own name.[34] This fact is not dispositive of the issue at hand. As a constitutional corporation, owing its existence not to the legislature but to a charter from the ultimate sovereign, the will of the people of this state, this basic corporate power would inhere in the University regardless of the legislature's declaration.[35]

In short, it is our conclusion that neither the University's unique corporate character nor its power to sue and be sued in its own name detracts in any degree from what we consider most significant and controlling in this case: that the University, in performing its constitutional functions, acts for the benefit of the state and of the public generally in the process of government; and that it was created to pursue the govern-

---

31. Huckins v. Board of Regents of University of Michigan, 263 F.Supp. 622, 624 (E.D. Mich.1967).

32. 220 N.W. at 953.

33. In *Chauvin*, where we ultimately concluded that under the fourteenth amendment to the Consitution of the United States a tenured employee of the University was entitled to a hearing before termination of his employment, this Court denied the University's motion for a stay of execution pending appeal under Rule 62(e) of the Alaska Rules of Civil Procedure. Rule 62(e) provides that no supersedeas bond is required when a stay of execution is granted pending an appeal by the state or its officers or agencies. In denying its motion, we did not specifically rule on the question of the University's status as an agency of the state for purposes of Rule 62. Moreover, we do not feel constrained in this case to decide wheth-

er the applicability of AS 09.50.290 to the University is dispositive of the University's standing with respect to Rule 62.

34. AS 14.40.040 provides:
   *General powers of the university.* There is created and established a corporation to be called the University of Alaska. It may in that name
   (1) sue and be sued;
   (2) receive and hold real and personal property;
   (3) contract and be contracted with;
   (4) adopt, use and alter a corporate seal;
   (5) do and have done all matters necessary for the purpose of any function set forth in this chapter.

35. Such a power, for example, is recognized to be a normal incident and attribute of corporate status per se. *See, e. g.,* H. Henn, Law of Corporations § 79, at 109 (1970).

mental task of providing education in accordance with an express mandate of the constitution, the fundamental and basic government of this state.

Article III, section 22 of the Alaska Constitution requires that all executive and administrative offices, departments, and agencies of the state government shall be allocated by law among and within not more than twenty principal departments. Petitioner contends that the University is not subject to AS 09.50.290 since it is not a department of the executive branch allocated among the 17 principal departments now identified under AS 44.15.010.[36]

■ The answer to this contention is that the University could not be so allocated. In the light of our foregoing consideration of the unique character of the University as a constitutional corporation, we are persuaded that it is an instrumentality of the sovereign which enjoys in some limited respects a status which is co-equal rather than subordinate to that of the executive or the legislative arms of government.[37] We therefore conclude that it is not necessarily subject to such allocation under AS 44.15.010.

■ Lastly, petitioner argues that in maintaining an experimental air strip on floe ice, the University was acting in a "proprietary," rather than "governmental" capacity, and that therefore, consistent with the common law principle in such cases, the privileges incident to sovereignty should not be recognized in this case.

We are aware of the historic force of this distinction and acknowledge that it would appear to be honored in many jurisdictions.[38] We note, however, that some states have recognized that the distinction between proprietary and governmental functions has little if any relevance in actions involving the question of the immunity or liability of the state, as opposed to its political subdivisions, in connection with the activities of public schools or institutions of higher learning.[39] We observe that the proprietary-governmental distinction was abandoned by this court with respect to municipal tort liability in the case of City of Fairbanks v. Schaible.[40] We take this opportunity to extend that ruling to suits involving the state or its agencies under AS 09.50.250–.300.

We reach the conclusion that the University of Alaska is an integral part of the state government and an instrumentality of the state in performing its educational function. This being so, AS 09.50.290, which provides that a suit against the state

---

36. AS 44.15.010 provides:
    *Offices and departments.* There are in the state government the following principal offices and departments:
    (1) Office of the Governor
    (2) Department of Administration
    (3) Department of Law
    (4) Department of Revenue
    (5) Department of Education
    (6) Department of Health and Social Services
    (7) Department of Labor
    (8) Department of Commerce
    (9) Department of Military Affairs
    (10) Department of Natural Resources
    (11) Department of Fish and Game
    (12) Department of Public Safety
    (13) Department of Public Works
    (14) Department of Economic Development
    (15) Department of Highways

    (16) Department of Environmental Conservation
    (17) Department of Community and Regional Affairs

37. *See* State ex rel. Sholes v. University of Minnesota, 54 N.W.2d 122, 125–26 (Minn. 1952).

38. *See* Annot., 33 A.L.R.3d 703, §§ 7 et seq. (1970).

39. *See* McCoy v. Board of Regents, 196 Kan. 506, 413 P.2d 73 (1966); Holzworth v. State, 298 N.W. 163 (1941).

40. 375 P.2d 201, 208 (Alaska 1962). It is significant that our decision in *Schaible* was predicated upon a statutory waiver of governmental immunity which, in all respects material to this case, is the functional equivalent of AS 09.50.250.

shall be tried by the court without a jury, is applicable in this case.

The order striking petitioner's demand for a jury trial is affirmed.

ERWIN, BOOCHEVER and BURKE, JJ., not participating.