Sherman CARTER, acting President of the University of Alaska, and University of Alaska, Appellants,

v.

ALASKA PUBLIC EMPLOYEES ASSOCIATION, Appellee.

No. 6586.

Supreme Court of Alaska.

April 22, 1983.

Terrance A. Turner, Owens & Turner, P.C., Anchorage, for appellants.

John E. Casperson, Juneau, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

The central issue raised by this appeal is the applicability of Alaska's public records disclosure statute, AS 09.25.110–.120, to the University of Alaska. A suit for injunctive relief was filed by the Alaska Public Employees Association (APEA), a union engaged in a campaign to organize University employees for purposes of collective bargaining. The APEA sought to compel Sherman Carter, acting President of the University, to disclose particular items of information pertaining to University employees, invoking AS 09.25.110–.120. The superior court granted APEA's motion for summary judgment, and entered a final judgment ordering the University to provide the Union with:

[a] listing of every classified employee with the community college and university systems statewide by name, position control number, job title and job location.

The superior court denied the University's motion to vacate or alter the judgment, and this appeal followed.

The facts are undisputed. In early 1981, the APEA began to investigate the possibility of organizing classified University employees for purposes of collective bargaining.[1] In furtherance of this project, the APEA sought a list of University employees and their location. Detailed departmental budget reports, published every September and placed in University libraries at the beginning of the school term, contained most of the necessary information.[2] However, by the end of February 1981, when the APEA conducted its inquiry, the library copies of the reports were dated, as they had not been revised since September 1980. Furthermore, the reports did not disclose an employee's geographical location. Thus, the APEA delivered a letter to Sherman Carter, the acting President of the University of Alaska, requesting:

1. A listing of every classified employee with the Community College and University system statewide by name, position control number, job title and job location; and

2. Name and address of every classified employee with the Community College and University system statewide.

Carter refused to provide the information and thereafter the APEA filed suit for injunctive relief, demanding that Carter be compelled to disclose the records pursuant to AS 09.25.110–.120.[3] Subsequently, the

---

1. The APEA is a labor organization formed pursuant to the Public Employment Relations Act (PERA), AS 23.40.070 et seq. The University is a "public employer" under PERA. AS 23.40.250(6) defines "public employer" as "the state or a political subdivision of the state, including without limitation, a town, city, borough, district, board of regents . . . ."

2. These budget reports, prepared annually, are maintained in a computer and revised throughout the school year. The purpose of each report is to demonstrate the allocation of the overall state university budget among individual departments. The publication contains a listing of every classified employee by name, position control number, and job title. It does *not* indicate the employee's geographical situs, or "job location," and library copies are not updated during the school year.

3. AS 09.25.110 states:

 *Inspection and copies of public records.* Unless specifically provided otherwise the books, records, papers, files, accounts, writings, and transactions of all agencies and departments are public records and are open to inspection by the public under reasonable rules during regular office hours. The public officer having the custody of public records shall give on request and payment of costs a certified copy of the public record.

 AS 09.25.120 states:

 *Inspection and copying of public records.* Every person has a right to inspect a public writing or record in the state, including public writings and records in recorders' offices except (1) records of vital statistics and adoption proceedings which shall be treated in the manner required by AS 18.50.010–18.-50.380; (2) records pertaining to juveniles; (3) medical and related public health records; (4) records required to be kept confidential by a federal law or regulation or by state law. Every public officer having the custody of records not included in the exceptions shall permit the inspection, and give on demand and on payment of the legal fees therefor a certified copy of the writing or record, and the copy shall in all cases be evidence of the original. Recorders shall permit memoranda, transcripts, and copies of the public writings and records in their offices to be made by

APEA moved for summary judgment on the issue of whether the material withheld was a public record within the meaning of AS 09.25.110. The superior court ruled in APEA's favor, concluding that it had jurisdiction over APEA's complaint, that APEA was not required to exhaust administrative remedies under PERA before filing a request for information under AS 09.25.110, that the University was an "agency" within the meaning of the public records statute, and that the privacy interest of university employees was outweighed by policies underlying mandatory disclosure under AS 09.25.110. The superior court's final judgment required the University to furnish the APEA with

> [a] listing of every classified employee with the community college and university systems statewide by name, position control number, job title and job location.

This appeal followed.[4]

I. *Applicability of the Alaska Public Records Statute, AS 09.25.110–.120, to the University of Alaska.*

Here the threshold question is raised regarding the power of the legislature to subject the University to the mandate of the public records disclosure statute.[5] The APEA cites *University of Alaska v. National Aircraft Leasing, Ltd.,* 536 P.2d 121 (Alaska 1975), in support of its contention that the University's status as a constitutional corporation does not entitle it to immunity from compliance with statutes governing the operation of state instrumentalities, including the public records disclosure law.[6] The APEA's reliance upon *National Aircraft* is not misplaced. Under former AS 09.50.290,[7] actions against the state were to be tried by the court, a procedural limitation upon the state's general waiver of sovereign immunity. In *National Aircraft,* the issue was whether the University, as defendant in a tort suit arising from an accident that occurred on a University-owned air strip, was entitled to a trial by jury. We held that

> the corporate status of the University of Alaska under the Alaska Constitution does not militate against our conclusion that the University falls within the ambit of the language of AS 09.50.250–.300 which governs suits against the State of Alaska.

536 P.2d at 127. In *National Aircraft* we explicitly rejected the argument raised by

---

photography or otherwise for the purpose of examining titles to real estate described in the public writings and records, making abstracts of title or guaranteeing or insuring the titles of the real estate, or building and maintaining title and abstract plants; and shall furnish proper and reasonable facilities to persons having lawful occasion for access to the public writings and records for those purposes, subject to reasonable rules and regulations, in conformity to the direction of the court, as are necessary for the protection of the writings and records and to prevent interference with the regular discharge of the duties of the recorders and their employees.

**4.** After the superior court rendered its judgment the University filed a motion to vacate or, alternatively, to alter or amend the judgment. The University argued that it did not maintain some of the requested information as a record in its files, that AS 09.25.110 did not require agencies to generate records, and thus that the superior court's order should be altered to delete the requirement that data not in existence be compiled and released. Alternatively, the University asked that the judgment be amended to require APEA to reimburse the University for the cost of generating such data, estimated

at $10,000. The motion was summarily denied and this appeal followed.

**5.** See note 3, *supra.*

**6.** Article VII, section 2 of the Alaska Constitution provides:

> The University of Alaska is hereby established as the State university and constituted a body corporate. It shall have title to all real and personal property now or hereafter set aside or conveyed to it. Its property shall be administered and disposed of according to law.

Article VII, section 3 of the Alaska Constitution provides for governance of the University, as follows:

> The University of Alaska shall be governed by a board of regents. The regents shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session. The board shall, in accordance with laws, formulate policy and appoint the president of the University. He shall be the executive officer of the board.

**7.** AS 09.50.290 was repealed by § 1 ch. 147 SLA 1975.

the University in this case that the framers must have established the University as a "body corporate" in order to render it autonomous:

> It is true that the constitution has established the University as a body corporate. The fact that the University has had conferred upon it the status of a juristic person is not dispositive, however, of our ruling in this case. There are several reasons why this structural approach may have been taken. It may have been created as a corporation so as to simplify its transactions with the federal government in accepting grants of lands, and to facilitate its dealings with other persons in leasing and selling the lands it acquires or in conducting general business activities. Also, this corporate status may have been chosen in order to shield the individual members of the board of regents from personal liability in actions which might lead to a judgment for money damages against the University.

536 P.2d at 125 (footnotes omitted).[8]

■ We are of the opinion that the policy considerations which led us to conclude in *National Aircraft* that the University was, in essence, a branch of the state system of public education, justify holding that the Alaska legislature could subject the University to the provisions of AS 09.25.110–.120.

II. *The University's Status as an "Agency" Within The Meaning of AS 09.25.-110.*

Given our conclusion that the legislature constitutionally may require the University to disclose its records upon public request,

we must address the question of whether AS 09.25.110–.120 was intended to apply to the University.

We recently considered the question of the type of entities subject to the public records disclosure enactment in *City of Kenai v. Kenai Peninsula Newspapers, Inc.,* 642 P.2d 1316 (Alaska 1982). There we held that municipalities were subject to the disclosure requirements of AS 09.25.110. *Id.* at 1323. Because many of the arguments raised by the University in this appeal were rejected in the *Kenai* case, we deem *Kenai* controlling authority here.

■ In contending that it is not "an agency or department of the state" for purposes of the public records disclosure statute, the University presents an argument similar to that raised earlier by the City of Kenai.[9] In *Kenai,* we rejected the argument, finding that the determinative adjective in AS 09.25.110–.120 limiting the scope of the statute was the word "public." [10] The conclusion was reached after extensive reference to the historical context and legislative history of AS 09.25.110–.120, as well as an examination of the "plain meaning" of statutory language. We found that in enacting the present public records law, the legislature had no intention of altering the common law rule that "every interested person was entitled to the inspection of public records." At most, the legislature that first codified this public right intended to expand upon common law prerogatives by "eliminating the requirement that the person seeking inspection have an interest." [11] Thus, providing the records were kept by a public entity, they were subject to disclosure under the law.[12]

---

8. In *National Aircraft* we further stated:

> By constitutional provision, the University as a corporate entity holds title to all property which is conveyed or set aside to it. The disposition and administration of such property, however, is made expressly subject to a degree of legislative control. The board of regents is empowered by the constitution to "govern" the university. Nevertheless it is obliged to formulate policy as well as appoint its chief executive "in accordance with law." The regents, moreover, hold office by virtue

of the approval of both the governor and both houses of the legislature.
536 P.2d at 123 (footnote omitted).

9. *Kenai,* 642 P.2d at 1321.

10. *Id.*

11. *Id.* at 1319–22.

12. In *Kenai,* we adverted to a definition of "public" contained in Webster's New International Dictionary (2d ed. 1960):

Legislative enactments support a conclusion that the University is generally deemed a "public" entity. Of particular significance is the fact that the legislature specifically defined "public employees" to include University personnel in AS 39.51.-020(b), the statutory provision prohibiting the state from taking disciplinary action against any public employee releasing information pursuant to AS 09.25.110–.120.[13] *Kenai* held that because AS 39.51.020(b) protected municipal employees disclosing information pursuant to AS 09.25.110–.120, the public records statute must have been intended to encompass municipalities. The majority in *Kenai* rejected the cities' argument that AS 39.51.020(b) specifically mentioned municipal employees not because the public records statute

> applied to local governments but because local government employees often come into possession of state records which are public and may wish to allow the inspection of these records and need protection

Having a civil, or official, character, authority, status, or the like; authoritatively serving or representing the public; as, a *public* official, prosecutor, or legislative body; to hold *public* office; also, as in titles of departments, agencies, etc., of the civic or state government; as, *public* health, relief, welfare or safety. [Emphasis in original.]

Quoted in *Kenai,* 642 P.2d at 1321–22.

**13.** AS 39.51.020 provides, in full:
*Obstruction of access to public information.* (a) No public employee may be dismissed, demoted or suspended, laid off or otherwise made subject to any disciplinary action for communicating matters of public record or information under AS 09.25.110 and 09.25.-120.
(b) As used in this section, "public employee" means any employee receiving compensation for services provided to the state (including the University of Alaska) or any political subdivision of the state.
(c) A violation of this section is a misdemeanor.

**14.** *Kenai,* 642 P.2d at 1322.

**15.** Furthermore, the University is deemed a public employer under the Public Employment Relations Act, AS 23.40.250(6). Meetings of the board of regents must be public under AS 14.40.160 and AS 44.62.310, and the University is subject to due process restraints. *University of Alaska v. Chauvin,* 521 P.2d 1234 (Alaska 1974).

from discipline by their employers in so doing. We find this to be a very strained and unnatural reading of the statute. It is far more logical to conclude that the 1977 legislature assumed that §§ .110 and .120 apply to municipalities as well as to the state and concluded that municipal as well as state employees were deserving of protection.[14]

The University raises the same argument here, distinguishing *Kenai* on the ground that the 1977 legislature which enacted AS 39.51.020 was particularly aware of the University's unique status, having amended AS 37.05.320(2) to include the University as a "state agency" under the Fiscal Procedures Act, AS 37.05.010 et seq., and thus that it would have amended AS 09.25.110–.120 to include the University if it had intended to do so. In our view, this argument lacks merit. *Kenai* supports the APEA's position that inclusion of the University's employees in AS 39.51.020 implies that the University is encompassed within AS 09.25.110–.120.[15]

As the APEA points out, there is no reasonable explanation for the proposition that the legislature intended to exclude the University from the public records law. Since the University is "an integral part of the state educational system," *National Aircraft,* 536 P.2d at 124, the public's right to review its records is equivalent to its right of access to the files of any other state agency. Higher education is frequently a controversial topic, and the people whose funds support the University have a right to be informed about the policies underlying their disbursement. The legislature's sensitivity to the public's "need to know" prompted enactment of AS 14.40.160 and AS 44.62.310, which require that meetings of the board of regents be open to the public, and AS 14.40.190 and .370, which require the University to make annual reports to the legislature and governor, respectively. The balancing process that precedes disclosure would protect information such as research documents on a showing that disclosure would ultimately harm the public welfare.

In *Kenai* we quoted with approval the description of the balancing process governing disclosure of public records set forth in *MacEwan v. Holm,* 359 P.2d 413, 421–22 (Or.1961) (en banc):

> "In determining whether the records should be made available for inspection in any particular instance, the court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in pub-

On the basis of the foregoing we conclude that the legislature intended to include the University within the scope of state agencies subject to the public records statute. Under the *Kenai* balancing test, the policies weighing in favor of permitting access to public records may be furthered without undermining the need to preserve the confidentiality of particular documents. In short, there are no compelling reasons against finding the University included within the ambit of governmental institutions which are subject to the provisions of AS 09.25.110.

III. *The President of The University as a Public Officer for Purposes of AS 09.25.110.*

The University contends that only elected officials are subject to AS 09.25.110, since the statute provides that *"public officer[s]* having the custody of public records shall give on request" a copy of such documents,[16] and "public officials" are defined as "person[s] elected to a public office .... " AS 09.25.220(2). Since the board of regents (appointed by the governor, Alaska Constitution, article VII, section 3) appoints the president, AS 14.40.170(1), who in turn appoints his subordinates, AS 14.40.210(2), none of the officials with custody of University records are elected. Thus, the University concludes, they are not required to comply with AS 09.25.110.

■ We disagree. AS 09.25.220 specifically provides that definitions therein are to be disregarded if "the context otherwise requires." Here, the context does necessi-

tate an expansion of the definition of public officer to include appointed officials. First, as noted earlier, AS 39.51.020(b) specifically protects University employees releasing information in accordance with AS 09.25.110. Thus, the legislature must have anticipated that University officials would be presented with demands for information under AS 09.25.110. Second, in *Kenai* we construed "public officer" in accordance with common usage rather than relying upon AS 09.25.-220(2). In that case we cited the definition of "public office" found in Webster's New International Dictionary (2d ed.1960): "An office or position in the services of a nation, state, city, etc." 642 P.2d at 1322. If, as we concluded in *National Aircraft*, the University is "the single governmental entity ... specifically created by the people to meet the statewide need for a public institution of higher education [existing] constitutionally to act for the benefit of the state and the public generally," 536 P.2d at 124–25, then the presidency is certainly an "office or position in the service of a ... state." *Kenai*, 642 P.2d at 1322. Thus, the University's argument that its president is not a "public officer" for purposes of AS 09.25.110, is rejected.

IV. *The Requested Records as "Public Records" Within the Meaning of AS 09.25.110.*

The University argues that AS 09.25.-110–.120 cannot be used to compel an agency to create a record to fulfill a request for disclosure. The University contends that it

---

lic property, against the interest of the public in having the business of government carried on efficiently and without undue interference. The initial decision as to whether inspection will be permitted must, of course, rest with the custodian of the records. And since the justification for a refusal to permit inspection will depend upon the circumstances of the particular case, we can offer no specific guide for that administrative decision.

. . . .

In balancing the interests referred to above, the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the inciden-

tal right of the agency to be free from unreasonable interference. The citizen's predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases; the burden is cast upon the agency to explain why the records sought should not be furnished. Ultimately, of course, it is for the courts to decide whether the explanation is reasonable and to weigh the benefits accruing to the agency from nondisclosure against the harm which may result to the public if such records are not made available for inspection. [Citation omitted]." 642 P.2d at 1328.

**16.** AS 09.25.110 (emphasis added).

does not presently maintain a listing of the "job location" of every classified employee and that the cost of generating such information would approach $10,000. Thus, the University concludes, non-existing data regarding "job locations" should not be subject to disclosure under the public records statute.

We find that it is not necessary to address this issue as counsel for appellee at oral argument conceded that the University of Alaska is under no duty to create a new record and that appellee would be satisfied to review existing relevant data in the University's possession.[17]

V. *Necessity of Proceeding Under The Public Employment Relations Act To Obtain The Requested Information.*

 The University argues that the superior court erred in refusing to dismiss the APEA's complaint for lack of jurisdiction contending that the Alaska Labor Relations Agency has primary authority to resolve disputes such as the one presented by the instant case.[18]

The superior court rejected the University's argument on the ground that the doctrine applied only when "at least some part of the case [fell] within the *exclusive jurisdiction* of [the] agency" in question, citing *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1033 (Alaska 1972), where we held that

[i]n order for such a judicial reference to be valid, at least some part of the case must fall within the exclusive jurisdiction of the administrative agency. The jurisdiction of the agency, in turn, depends upon the administrative authority conferred upon it by the relevant statutes. (Footnotes omitted.)

The superior court noted that the University itself had conceded that PERA neither granted nor denied exclusive jurisdiction over disputes such as the case at bar to the LRA. Since the APEA was not statutorily required to proceed before the LRA, the superior court concluded that the doctrine of primary jurisdiction was inapplicable. We are not persuaded that the superior court's ruling was erroneous and thus affirm the court's denial of the motion to dismiss.[19]

AFFIRMED.

---

**17.** We note that AS 09.25.120 specifically provides that implementation of AS 09.25.110 is not to "[interfere] with the regular discharge of the duties of the recorders and their employees." Regulations implementing the public records statute, which became effective October 8, 1982, specifically state that:

Nothing in this chapter requires an agency to organize, coordinate, collate, modify, create, interpret, or program records requested. Only a literal or verbatim record need be provided.

6 A.A.C. 95.140(b). A "record" is defined as: ... any *existing* document, paper, memorandum, book, letter, drawing, map ... magnetic or paper tape, punched card, or other item of any other material, regardless of physical form or characteristic, developed or received under law or in connection with the transaction of official business by an agency ....

6 A.A.C. 95.900(4) (emphasis supplied). *See also N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 161–62, 95 S.Ct. 1504, 1521–1522, 44 L.Ed.2d 29, 53–54 (1975). This definition is broad enough to include data kept in computers.

In its statement of points on appeal the University asserted that the APEA should be required to reimburse it for costs incurred in compiling the data requested under AS 09.25.-110–.120. Although the issue was stated in its points on appeal the University failed to brief the point. Thus, we decline to reach the question. *See Wren v. State,* 577 P.2d 235, 237 n. 2 (Alaska 1978); *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977).

**18.** The University relies on the fact that the APEA has fully admitted that the requested information would be used in its campaign to organize University employees and on the provisions of AS 23.40.170, which gives the Labor Relations Agency authority to adopt regulations governing public employment relations.

**19.** The University also argues that the APEA should have been required to comply with the procedures set out by the Labor Relations Agency in implementing the Public Employees Relations Act in order to obtain access to the information it seeks. The University's reliance on the exhaustion doctrine is misplaced. The doctrine is not applicable where the remedy sought is judicial rather than administrative. *Fidalgo Island Packing Co. v. Phillips,* 120 F.Supp. 777, 782 (D.Alaska 1954), *aff'd,* 16 Alaska 12, 230 F.2d 638 (9th Cir.1955), *cert. denied,* 352 U.S. 944, 77 S.Ct. 262, 1 L.Ed.2d 237 (1956). Resolution of a question of statu-

tory interpretation is judicial rather than ad- ministrative.