NORTHWEST ARCTIC REGIONAL
EDUCATIONAL ATTENDANCE
AREA et al., Petitioners,

v.

ALASKA PUBLIC SERVICE EMPLOY-
EES, LOCAL 71, Respondent.

STATE of Alaska, Petitioner,

v.

ALASKA PUBLIC SERVICE EMPLOY-
EES, LOCAL 71, Respondent.

Nos. 3360, 3362.

Supreme Court of Alaska.

March 16, 1979.

Joe P. Josephson, Josephson & Trickey,
Anchorage, for Northwest Arctic, Kuspac,
Adak, Iditarod, Yukon Flat, Alaska Gate-
way, and Copper River Regional Education-
al Attendance Areas, petitioners.

Thomas E. Fenton, Call, Haycraft & Fen-
ton, Fairbanks, for Yukon-Koyukuk, Upper
Railbelt, Delta/Greely, REAAs, petitioners.

Stephanie J. Cole, Rice, Hoppner & Hed-
land, Anchorage, for Bering Straits and
Lower Yukon, REAAs, petitioners.

William M. Bankston, Anchorage, for
Southwest, Pribilof, Lake and Peninsula,
and Aleutian, REAAs, petitioners.

Randall J. Weddle, Faulkner, Banfield,
Doogan & Holmes, Juneau, for Chatham
and Annette Islands, REAAs, petitioners.

Elliot T. Dennis, Fraties & Petersen, An-
chorage, for Chugach, REAAs, petitioner.

Ronald W. Lorensen, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for State of Alaska, petitioner.

Noel McMurtray, Abbott, Lynch, Farney & Rodey, Anchorage, for Alaska Public Service Employees, Local 71, respondents.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

The issue giving rise to this petition for review is whether the coverage of a collective bargaining agreement between the state and Alaska Tri-Trades Public Service Council extends to noncertificated employees of the Regional Educational Attendance Areas (REAAs). We conclude that the agreement does not govern employment relations between the REAAs and their noncertificated employees. In reaching this conclusion, we also hold that the Public Employment Relations Act (PERA) does not apply to the noncertificated employees of the REAAs.

I. The Collective Bargaining History of the REAAs and Noncertificated Employees

The Public Employment Relations Act, AS 23.40.070–260, went into effect on September 5, 1972. The PERA confers upon public employees the right to organize and bargain collectively with their employers and requires public employers to recognize collective bargaining units designated pursuant to the Act.

On March 22, 1974, the State of Alaska and Alaska Tri-Trades Public Service Council (Tri-Trades) entered into a collective bargaining agreement pursuant to the PERA. This agreement covered the conditions of employment for labor, trades and craft unit employees of the state. Originally, Tri-Trades was composed of locals of three unions: Laborers, Locals 341, 942 and 1331; Operating Engineers, Local 302; and Teamsters, Local 959. Later, it came to include Alaska Public Service Employees, Local 71.

By its terms the collective bargaining agreement was to remain in effect from year to year subject to renegotiation upon proper notice by either party. In August of 1974, the agreement was amended to include within the bargaining unit the noncertificated employees of the Alaska State Operated School System (ASOS), a state corporation established in 1970, to administer the public education system in Alaska's unorganized borough. Ch. 46 SLA 1970.

Effective July 1, 1975, the state legislature disbanded ASOS as the entity governing education in the unorganized borough. Ch. 124 SLA 1975. In its place the legislature created local school districts, the Regional Educational Attendance Areas (REAAs). AS 14.08.031(a). As far as practicable, each REAA was to contain "an integrated socio-economic, linguistically and culturally homogeneous area." AS 14.08.-031(b). The school board of each REAA was to be elected by the qualified voters of the respective districts, and the boards were given broad powers to manage their own operations and determine their own policies and procedures. AS 14.08.021; 14.08.041; 14.08.101; 14.08.111. To facilitate the transition from the previous centrally administered school system to independent local school districts, the legislature created the Alaska Unorganized Borough School District (AUBSD). The AUBSD was given a one-year lifetime. One of its tasks was to act as a "temporary regional school board for schools in the unorganized borough" during the 1975–1976 school year. Ch. 124, § 38, SLA 1975. At this time, the legislature declared that all permanent noncertificated employees of ASOS were no longer employees of the state. The legislature, however, directed the AUBSD to hire these employees. Ch. 124, § 41(b), SLA 1975.

In September of 1975, the state and Tri-Trades entered into a new contract, effective January 1, 1975, which superseded the March, 1974, agreement as it pertained to the state labor, trades and craft unit employees.

In October of 1975, George H. White, Superintendent of the AUBSD, wrote a letter to Guy Stringham, business agent of Tri-Trades, informing him that the AUBSD Board of Directors had adopted a new salary schedule and a modified grievance procedure for noncertificated school employees who were members of Tri-Trades. White stated that he was submitting the changes for Tri-Trades' "recommendation and approval" and that all other conditions of the 1974 agreement between Tri-Trades and the State of Alaska were to remain in effect. Thereafter, on December 16, 1975, Stringham wrote a letter to White in which he stated that the contract "negotiated" between Tri-Trades and AUBSD had been "approved and accepted as discussed [in talks between Stringham and White]." The union maintains that this exchange between Tri-Trades and AUBSD constituted a renegotiation of the March 22, 1974, collective bargaining agreement at issue in this case. The REAAs and the state maintain, however, that AUBSD unilaterally made the modifications in the contract.[1]

In April of 1976, Tri-Trades disbanded. In so doing, Tri-Trades assigned its rights and obligations to the Alaska Public Service Employees, Local 71 (hereinafter Local 71 or the union).

On or about July 1, 1976, the twenty-one individual REAAs took over the schools in their areas. Prior to and during this time, the boards of directors of the school districts began to exercise their powers to employ personnel and make contracts. Some of the REAAs entered into contracts with third parties to provide the maintenance and general labor services formerly supplied by noncertificated employees of AUBSD. Others met with noncertificated employees of AUBSD, reached agreements on such items as salary schedules and other employment benefits, and entered into individual contracts with the noncertificated employees. On July 22, 1976, the union notified a superintendent of one of the school districts that Local 71 still considered itself the bargaining agent for the noncertificated employees.

On September 14, 1976, the respondent, Local 71, brought an action in superior court against the State of Alaska and twenty-one REAAs alleging that the REAAs had breached the collective bargaining agreement entered into by the state and Tri-Trades on March 22, 1974. Local 71 asserted that this agreement applied to the noncertificated employees of the REAAs and requested declaratory and injunctive relief against all defendants in order to enforce the agreement against them.

On November 19, 1976, the superior court denied the union's motion for a preliminary injunction on the ground that the union had not demonstrated a likelihood of success on the merits. Thereafter, the superior court denied several motions to dismiss brought by the state and a number of the REAAs. At the same time, the court referred the case to the "labor relations agency" for a determination of three of the issues in the suit. In this petition for review, both the state and the REAAs[2] challenge the superior court's action in denying their motions to dismiss and in referring the case to the labor relations agency.[3]

II. Enforceability of the Collective Bargaining Agreement

 Local 71 seeks to bind the REAAs to the collective bargaining agreement entered

---

1. We decline to decide whether the modifications of the March 22, 1974, agreement were the result of renegotiation or unilateral action. Since we find that the REAAs are not bound to a collective bargaining agreement in the particular circumstances of this case, we need not reach this issue.

2. Of the 21 REAAs, it appears that 19 have joined as petitioners in this action.

3. The superior court failed to specify what "labor relations agency" it was referring the matter to. AS 23.40.250 states, in part, that as used in the Public Employment Relations Act, "unless the context otherwise requires . . . 'labor relations agency' means the state personnel board with regard to the state and employees of the state, and means the Department of Labor with regard to all other public employees and all other public employers."

into between Tri-Trades and the state.[4] Normally an employer must assume a preexisting collective bargaining agreement in order to be bound by it. Local 71, however, advances two theories to support its contention that the agreement binds the REAAs despite their failure to assume the agreement. First, the union argues that the REAAs are successor employers to ASOS and thus bound by the agreement entered into by ASOS. Second, the union contends that the contract remained in effect by statute despite the transfer of authority from ASOS to the REAAs. We reject both arguments and hold that the collective bargaining agreement does not bind the REAAs.

### A. Successor Employer Argument

Stated briefly, the successor employer doctrine[5] provides that, when business operations and employees are transferred from one employer to another, the new employer has a duty to bargain with the union previously chosen by the transferred employees where the employing industry remains essentially the same after the transfer of ownership. *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *NLRB v. Dent*, 534 F.2d 844, 845–46 (9th Cir. 1976). Factors used to determine whether the employing enterprise has re-

mained substantially the same include continuation of the same product lines, departmental organization, job functions, and continuity of the work force. *Burns*, 406 U.S. at 280 n.4, 92 S.Ct. at 1578 n.4, 32 L.Ed.2d at 68–69 n.4. The factor which has emerged as the most important is continuity of the work force. *Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 250, 94 S.Ct. 2236, 2237, 41 L.Ed.2d 46, 50 (1974); *Pacific Hide and Fur Depot, Inc. v. NLRB*, 553 F.2d 609, 611 (9th Cir. 1977). Although the new employer may have a duty to bargain with the employees' elected bargaining representative, it is not bound by the old collective bargaining agreement except in certain limited situations.[6]

In *Burns*, the Court first inquired whether the union was the representative selected by a majority of the employees in a unit appropriate for bargaining purposes. The Court found that the original unit remained appropriate and determined majority union support by finding that the majority of the successor's work force had been employees of the predecessor. These employees had already expressed their choice of a bargaining representative in an election. Because a majority of an appropriate unit had selected a bargaining representative and the employer had a duty to bargain under the

---

**4.** The threshold issue raised by the state and the REAAs is that Local 71 does not have standing to enforce the agreement. To have standing in this case, the union must be the chosen representative of a majority of the REAAs' noncertificated employees. This can be established in a number of ways, none of which has been presented to us. Local 71 also must show that a union predecessor can effectively assign its employee support. And last, there must have been such an assignment. Resolving these issues requires factual determinations not made below. In order to dispose of the important legal questions, we assume that Local 71 has standing, without deciding the matter.

**5.** As we have not previously considered the successorship doctrine, we turn to federal labor relations precedent for guidance on this matter. *See Alaska Pub. Employees Ass'n v. Municipality of Anchorage*, 555 P.2d 552, 553 (Alaska 1976).

**6.** In this regard the Court in *Burns* noted:

In many cases, of course, successor employers will find it advantageous not only to recognize and bargain with the union but also to observe the pre-existing contract rather than to face uncertainty and turmoil. Also, in a variety of circumstances involving a merger, stock acquisition, reorganization, or assets purchase, the Board might properly find as a matter of fact that the successor had assumed the obligations under the old contract. Cf. *Oilfield Maintenance Co.*, 142 N.L.R.B. 1384 (1963). Such a duty does not, however, ensue as a matter of law from the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor . . . .

*Burns*, 406 U.S. at 291, 92 S.Ct. at 1584, 32 L.Ed.2d at 75.

Labor Management Relations Act,[7] it was an unfair labor practice for the successor to refuse to bargain. 406 U.S. at 277–78, 92 S.Ct. at 1577, 32 L.Ed.2d at 67.

To meet the *Burns* criteria, Local 71 must show that the former statewide ASOS unit of noncertificated employees remained the appropriate bargaining unit despite the division of the ASOS into twenty-one REAAs. It must also show that it is the chosen representative of a majority of the work force. If Local 71 meets these two criteria, it must find a statute which imposes a duty to bargain analogous to section 8(a)(5) of the Labor Management Relations Act. Because, for the reasons set forth in section III of this opinion, we hold that PERA does not apply to noncertificated employees of school districts, no such statute exists. The successorship doctrine, therefore, does not impose a duty to bargain upon the REAAs. We need not reach the further question of whether the instant case is one of the limited situations in which it would be appropriate to bind the successor to a preexisting collective bargaining agreement.

### B. Statutory Argument

Local 71's second argument is that the legislature expressly bound the REAAs to the collective bargaining agreement. The legislature provided in the transitional provisions of the enactment creating the REAAs that "[a]ll contracts or other obligations created by a law amended by this Act or by virtue of functions which may be transferred by this Act, and in effect on the

effective date of this Act, remain in effect unless revoked or modified under the provisions of this Act." Ch. 124, § 40, SLA 1975 (in part). Local 71 argues that this language could include the transfer of the state's labor contract obligations. But when section 40 is read together with the remaining transitional provisions, this conclusion is not so clear.

In section 41(b), the legislature specifically addressed the status of the noncertificated employees by directing that they "shall be terminated by the State and shall be rehired by the respective regional school boards or by the temporary regional school board . . . ."[8] Implicit in the termination of the employees is the intention not to bind the ASOS' successor to existing employment contracts. This interpretation conforms with section 41(a) which specifically carries teachers over to the new employer with their accumulated employee contract benefits.[9] No such provision was made for noncertificated personnel. In light of the broad grant of self-determination given the REAAs and their power to "appoint, compensate and otherwise control all school employees," AS 14.08.101(4), it would be contrary to the apparent legislative intent to bind the REAAs to a prior collective bargaining agreement in the absence of specific language to that effect.

We therefore hold that section 40 does not bind the REAAs to the preexisting collective bargaining agreement.

### III. Applicability of PERA

Local 71 argues that the Public Employment Relations Act, AS 23.40.070–260,

---

7. Labor Management Relations Act § 8(a)(5), 29 U.S.C. § 158(a)(5) (1976).

8. Ch. 124, § 41(b), SLA 1975 provides:
 All permanent noncertificated employees of the State-Operated School System in the communities and regional offices who are state employees on the effective date of this Act shall be terminated by the state and shall be rehired by the respective regional school boards or by the temporary regional school board under sec. 38 of this Act.

9. *See* ch. 124, § 41(a), SLA 1975, which provides: "All teachers, as defined in AS 14.20.270(1), in the communities or regional offices served by the State-Operated School System on

the effective date of this Act and who have been retained for the 1975–76 school year are subject to the provisions of AS 14.20.147;" and AS 14.20.147, which provides in pertinent part:
 When an attendance area is transferred from a currently operating district to, or absorbed into, a new or existing school district, the teachers for the attendance area also shall be transferred unless otherwise mutually agreed by the teacher or teachers and the chief school administrator of the new district. Accumulated or earned benefits, including but not limited to, seniority, salary level, tenure, leave and retirement, accompany the teacher who is transferred.

(PERA) imposes upon the REAAs a duty to bargain with the union's members. This Act, however, excludes noncertificated employees of school districts from its coverage. The Act gives "public employees" the right to organize and bargain collectively with their employers. AS 23.40.080. By definition, however, the term "public employees" does not include "noncertificated employees of school districts." AS 23.40.250(5). REAAs appear to be school districts within the meaning of the statute.[10] Local 71 concedes the plain meaning of the statute. The union, however, raises several arguments in support of its contention that the PERA should apply nonetheless. First, it argues that by entering into a collective bargaining agreement, ASOS waived its exempt status and this waiver is binding on the REAAs. Second, it argues that noncertificated REAA employees have grandfather bargaining rights under AS 23.40.240.[11] Neither of these arguments is persuasive.

### A. Waiver

Local 71 contends that the State Operated School System (ASOS), the REAAs' predecessor, could have asserted that it had no duty to bargain with its noncertificated employees under AS 23.40.250(5).[12] It further argues that the ASOS, however, elected to enter into the March, 1974, collective bargaining agreement with these employees. Because the ASOS elected to bargain when not required to do so under the PERA, Local 71 concludes that the REAAs have waived their right to assert the exemption.

The first problem with Local 71's argument is that it is not clear whether ASOS could have claimed the exemption. ASOS may not have been a "school district" under AS 23.40.250(5). If ASOS was not a school district, the noncertificated employees would have been public employees covered by PERA.

In *Begich v. Jefferson*, 441 P.2d 27 (Alaska 1968), we held that employees of the state operated school district were employees of the State of Alaska. At that time the school system for the unorganized borough was run by the Department of Education; the ASOS took over as the governing body two years later. Thereafter, in *Alaska State-Operated School System v. Mueller*, 536 P.2d 99 (Alaska 1975), we held that the ASOS was an agency of the state within the meaning of the Civil Rules governing service of process and pleadings. Although neither of these cases determines the status of the ASOS under the PERA, they imply that the ASOS was a state agency for purposes other than the Civil Rules, and that its employees were still employees of the state despite the transfer of authority from the Department of Education to the ASOS. From this it follows that the ASOS was a state agency subject to the PERA and not a "school district" whose noncertificated employees are exempt under AS 23.40.250(5).

The state labor relations agency appeared to take this view when it declared that the noncertificated employees of the ASOS were public employees of the State of Alaska and public employees within the meaning of AS 23.40.250(5). This view was

---

**10.** *See* AS 14.12.010 which provides:
The districts of the state public school system are as follows:
 (1) each first class city in the unorganized borough is a city school district;
 (2) each organized borough is a borough school district;
 (3) the area outside organized boroughs and outside first class cities is divided into regional educational attendance areas.

**11.** Local 71 has also argued before this court that AS 23.40.250(5) denies noncertificated employees of school districts equal protection and is therefore unconstitutional. This issue, however, was not properly raised in the superior court and is not before this court on review.

We decide only that AS 23.40.250(5) exempts noncertificated employees from PERA coverage and decline to consider whether this exemption is constitutional.

**12.** AS 23.40.250 provides in part:
 *Definitions.* In § 70–260 of this chapter, unless the context otherwise requires,

 · · ·

 (5) "public employee" means any employee of a public employer, whether or not in the classified service of the public employer, except elected or appointed officials or teachers or noncertificated employees of school districts · · · ·

shared by the Department of Law in its opinion letter to the superintendent of the ASOS. Alaska Op.Att'y Gen. (Oct. 5, 1973). Therefore, Local 71's waiver argument is flawed at the outset because it flows from a faulty premise, that the ASOS had a "right" (to refuse to bargain) which it could waive.

The doctrine of waiver is also inappropriate in the present situation. In the first place, it seems highly doubtful that the concept of waiver of conditions or rights found in private contract cases could or should be applied in a case involving important public questions. Moreover, even if ASOS had waived its right to claim exemption under the PERA, it does not follow that the REAAs also have waived their right to assert the statutory exemption. The REAAs are not simply successors to the ASOS; they are independent entities which have been given broad powers to run their individual school districts as they see fit. AS 14.08.021; 14.08.101.

### B. Grandfather Rights

Local 71 maintains that the noncertificated REAA employees have grandfather bargaining rights under AS 23.40.240, which provides: "Nothing in this chapter [PERA] terminates or modifies a collective bargaining unit, recognition of exclusive bargaining representative, or collective bargaining agreement if the unit, recognition, or agreement is in effect on September 5, 1972." Contrary to the union's assertion, there appears to be no evidence that the noncertificated employees existed as a bargaining unit on September 5, 1972. The evidence in the record tends to show that the bargaining unit was not in effect until after September 5, 1972. For example, an attorney general opinion, dated October 5, 1973, states that "all State employees, *except* SOS non-certificated employees have been encompassed within bargaining units in which elections have been held or are in the process of being held." Alaska Op.Att'y Gen. (Oct. 5, 1973) (emphasis added). It appears that the unit was disputed as late as January of 1974. Labor Relations Agen-

cy Order and Decision No. 11 (January, 1974) (concerning a dispute regarding the appropriate unit for noncertificated employees of the ASOS). Furthermore, Tri-Trades was elected as the bargaining representative of these employees as late as October 28, 1975. Letter from Department of Labor to George White, Superintendent AUBSD (Nov. 3, 1975). Because we find no evidence to support Local 71's claim that a bargaining unit was in effect prior to September 5, 1972, we need not determine the extent of the rights provided by AS 23.40.-240.

In determining that the PERA does not encompass these employees, we reverse the superior court's order referring the case to the labor relations agency. The "labor relations agency" is the State Personnel Board if the matter concerns state employees, and the Department of Labor if the matter concerns any other public employees. AS 23.40.250(3). Because the noncertificated employees of school districts are not employees of the state directly or public employees under the PERA, neither labor agency has jurisdiction to determine the applicability of the collective bargaining agreement.

In sum, we hold that the Public Employment Relations Act exempts noncertificated employees of the REAAs from its coverage. The REAAs therefore have no statutory duty to bargain with a bargaining representative of the noncertificated employees. In addition, we hold that the legislature did not intend to bind the REAAs to the employment contracts of their predecessor, the ASOS.

REVERSED.