**STATE OF ALASKA, Plaintiff-Appellant,**

v.

**CHEVRON CHEMICAL COMPANY; Phillips Pacific Chemical Company; Western Farm Service, Inc.; etc., et al., Defendants-Appellees.**

**No. 79–4817.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1981.

Decided Feb. 24, 1982.

C. David Sheppard, Seattle, Wash., argued, for plaintiff-appellant; Mark E. Ashburn, Chief Asst. Atty. Gen., Anchorage, Alaska, Ferguson & Burdell, Seattle, Wash., Avrom M. Gross, Atty. Gen., Anchorage, Alaska, on brief.

George A. Cumming, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., argued, for defendants-appellees; James Michael, Gary H. Anderson, Reginald D. Steer, Pillsbury, Madison & Sutro, San Francisco, Cal., on brief, for Chevron Chemical Co.; Peter D. Byrnes, Spencer Hall, Jr., Bogle & Gates, Seattle, Wash., on brief, for Phillips Petroleum Co. & Phillips Chemical Co.; William Simon, Robert B. Abrams, Howrey & Simon, Washington, D.C., on brief, for Shell Oil Co., Shell Chemicals, Inc., IND/AG Chemicals Inc. & Western Farm Service, Inc.; James L. Magee, Donald K. Franklin, Sax & Maciver, Seattle, Wash., on brief, for Cominco American Inc.; Richard Haas, Lasky, Haas, Cohler & Munter, San Francisco, Cal., Hans E. Menter, Los Angeles, Cal., on brief, for Union Oil Co. of California; Carl J. Schuck, Frederick A. Clark, Overton, Lyman & Prince, Los Angeles, Cal., on brief, for J. R. Simplot Co. & Simplot Industries, Inc.

Before WALLACE and TANG, Circuit Judges, and FRYE,* District Judge.

TANG, Circuit Judge:

Alaska appeals from the summary judgment in favor of certain members of the agricultural fertilizer industry in the Northwest, the defendants in this antitrust action. We conclude that the district court erred in determining that direct purchases by the University of Alaska did not entitle the State of Alaska to sue as a direct purchaser of an allegedly price-fixed product. Therefore, we reverse and remand.

I

## FACTUAL BACKGROUND

In 1975 the State of Alaska filed an antitrust class action complaint against certain large suppliers of agricultural fertilizer. As amended, the complaint alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and of section 7 of the Clayton Act, 15 U.S.C. § 18.[1] Alaska sought to represent two classes: (1) political subdivisions within the state that purchased fertilizer during the relevant time period; and (2) all other end-users, i.e., persons purchasing fertilizer for their own use, whose purchases in any year during the relevant time period exceeded a certain amount. Alaska sought, inter alia, treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, and injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26.

---

* The Honorable Helen J. Frye, United States District Judge for the District of Oregon, sitting by designation.

1. The complaint alleged a combination and conspiracy to eliminate competition in the Northwest fertilizer industry by fixing prices and allocating markets in violation of §§ 1 and 2 of the Sherman Act. It also alleged that certain acquisitions of formerly independent fertilizer dealers violated § 7 of the Clayton Act.

*Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), was decided while a motion for class certification by Alaska was pending.[2] After considering the effect of *Illinois Brick,* the court conditionally certified as a class purchasers who were either: (1) direct purchasers from a defendant or from an entity owned or controlled by a defendant; or (2) indirect purchasers who acquired fertilizer under the economic equivalent of a preexisting cost-plus contract.[3]

In June 1979 the defendants moved for summary judgment against Alaska on the ground that its claims were barred by *Illinois Brick.* Based on the affidavit of a consulting expert who had summarized and analyzed transaction documents produced by the plaintiffs, the defendants contended that Alaska had made no direct purchases from the defendants. In opposition, Alaska alleged that it had discovered that the University of Alaska had bought fertilizer directly from one defendant in transactions amounting to about $16,000 during the period in controversy.

On September 14, 1979, the court decided the summary judgment motions and the class action issues. Apparently accepting the defendants' position that the University of Alaska was a different entity from the State of Alaska, the court found that purchases by the University did not give Alaska standing to sue. Because the facts

showed no other direct purchases by Alaska, the court granted the defendants' motion for summary judgment and dismissed Alaska's complaint and cause of action.

## II

## DISCUSSION

The question presented is novel: whether direct purchases of fertilizer by the University of Alaska should be considered purchases by the State of Alaska for the purpose of the direct purchaser requirement enunciated by *Illinois Brick.*[4] The parties do not dispute that the University made direct purchases of fertilizer from the defendants.

In considering Alaska's standing to sue, the district court relied in part on the nature of the University as an independent corporate entity. The Alaska constitution and statutes define the status of the University and its relationship to the State. The Alaska Constitution establishes the University of Alaska as the state university, Alas.Const. art. VII, § 2, and as a constitutional corporation it is authorized to sue and to be sued. *See University of Alaska v. National Aircraft Leasing, Ltd.,* 536 P.2d 121, 127 (Alaska 1975).

The defendants characterize the University as an independent constitutional corporation and contend that Alaska cannot bring an antitrust action on behalf of the University. Under their analysis, the purchases by

2. In *Illinois Brick* the Court held that an indirect purchaser cannot sue a manufacturer for damages under § 4 of the Clayton Act subject to certain exceptions. 431 U.S. at 736, 736 n.16, 97 S.Ct. at 2070, 2070 n.16.

3. In pertinent part, the class was defined as:
   A class consisting of all persons in each of the respective states involved in this litigation who, during the period in controversy, have purchased commercially within said state(s) from a defendant, or from an entity owned or controlled by a defendant, either
   (A) directly; or
   (B) indirectly under circumstances which are the economic equivalent of a pre-existing cost-plus contract; but
   (C) excluding
   ....
   (iv) those whose fertilizer purchases for their own use within the State of Alaska

during any one year during the period in controversy did not equal or exceed $250 in cost.

4. Alaska concedes that purchases by the State from local retailers were indirect purchases. Other circuits have held that *Illinois Brick* does not preclude suit on antitrust claims by indirect purchasers for injunctive relief under § 16 of the Clayton Act. *See United States Steel Corp. v. Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1275 (3d Cir. 1979); *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1167 (5th Cir. 1979), *cert. denied,* 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980). Because neither party separately questions the dismissal of Alaska's § 16 claims, however, we do not consider the propriety of the court's dismissal of those claims. The district court may wish to consider this question on remand.

the University would give rise to a new cause of action by a new party, but should not be considered the equivalent of a purchase by a state agency or instrumentality for the purpose of a suit under the antitrust laws.

■ Alaska contends that it is always the real party in interest in a suit involving the state university. *See Arkansas v. Texas,* 346 U.S. 368, 370–71, 74 S.Ct. 109, 110, 98 L.Ed. 80 (1953) (for purposes of article III original jurisdiction in the Supreme Court, Arkansas could sue on the basis of Texas's alleged unlawful interference with the performance of a contract between a Texas corporation and the University of Arkansas). Even if the State is not the real party in interest where the state university suffers some injury, however, the State may still have standing to sue. We adopt the view of the Fifth Circuit that in determining whether a state has standing to sue on behalf of its constituent units under the federal antitrust laws, the federal court must look to the applicable state law. *See In Re Armored Car Antitrust Litigation,* 645 F.2d 488, 492–93 (5th Cir. 1981) (Maryland law); *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 268 (5th Cir.) (Florida law), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 48 L.Ed.2d 172 (1976). Thus we next consider whether Alaska law permits the State to bring an antitrust action on behalf of the University of Alaska.

Although not directly on point, the decision by the Alaska Supreme Court in *National Aircraft Leasing,* 536 P.2d at 124, supports the State's standing to sue on behalf of the University. There the court held that in a suit brought against the University, the University could not demand a jury trial because it was an instrumentality of the state, and such instrumentalities are precluded by statute from demanding jury trials. *See also University of Alaska v. Hendrickson,* 552 P.2d 148, 149 (Alaska 1976) (Alaska statute precluding the recovery of punitive damages in suits against the state applied to suits against the University). *Cf. Brown v. Wood,* 575 P.2d 760, 766 (Alaska 1978) (University is in essence a branch of the state government), *modified on other grounds on rehearing,* 592 P.2d 1250 (Alaska 1979).

■■ Under Alaska law the University is considered a state instrumentality when it is being sued. The state attorney general is specifically authorized to bring and prosecute actions where "a state department, agency, board, commission or public officer" is a proper party. *See* Alaska Stat. § 44.-80.010.[5] Although not included within the specified terms, we conclude that the Alaska courts would categorize a state instrumentality, such as the University, as a state agency for the purpose of permitting the Alaska attorney general to bring an antitrust action on behalf of the University. *Cf. In re Armored Car Litigation,* 645 F.2d at 492–93 (applying Maryland law, held that Attorney General has authority to in-

**5.** The statute provides:

Sec. 44.80.010. *State as a party to actions.* If a statute or regulation designates a state department, agency, board, commission, or public officer as a necessary or proper party to prosecute or defend an action in a court of the state, (1) the state is also a proper party to the action, (2) it is not necessary to name a department, agency, board, commission, or public officer as an additional party to the action, and (3) the Department of Law may bring, prosecute, or defend the action in any court in the name of the state.

The dissent, relying upon the phrase "in a court of the state," concludes that this statute applies only when an action occurs in state court. We respectfully disagree. The statutory language the dissent cites is found in the statute's first clause. The clause pre-condi-

tions the application of the statute's three subsection upon a find that statute or regulation designates the state instrumentality as a necessary or proper party in an action "in a court of the state." We read this pre-condition to require only that a statute or regulation exist giving the state instrumentality the legal capacity to be a plaintiff or defendant in the courts of the state. This pre-condition is satisfied here. *See* Alaska Stat. § 14.40.040(1). Once this pre-condition is satisfied, subsection (3) permits the State attorney general to "bring, prosecute or defend the action *in any court* in the name of the state." (Emphasis added). The statute's reference to "any court" strongly suggests that the State attorney general may represent a state instrumentality in federal as well as state court.

stitute antitrust action on behalf of Maryland's political subdivisions).[6] This is especially true where, as here, there is no conflict between the State and the University, and the University has not objected to the state proceeding on its behalf.[7]

## III

## CONCLUSION

We conclude that the Alaska Supreme Court would permit its attorney general to bring an antitrust action on behalf of the University of Alaska. Because the University made direct purchases from the defendants, the State has standing to proceed with this suit. We therefore need not address the other issues raised by the parties.[8] The case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

WALLACE, Circuit Judge, dissenting:

The narrow issue upon which the majority opinion turns is whether Alaska law provides the State with the authority to file a federal antitrust action, in its own name, on behalf of the University. In concluding that it does, the majority ignores the unique and substantial independence granted to the University by the Alaska constitution and statutes. Therefore, I respectfully dissent. I would hold that the State has no standing to seek damages on behalf of the University, and I would reach the remaining issues the majority avoids.

The Alaska Supreme Court has held that "[t]he [U]niversity is a corporation of independent authority established by the Alaska Constitution," with standing to assert its legal interests against the State. *Alaska v. University of Alaska*, 624 P.2d 807, 818 (Alaska 1981). As a constitutional corporation, owing its existence to a charter from the people of the State, the basic corporate power to sue and be sued inheres in the University. *University of Alaska v. National Aircraft Leasing, Ltd.*, 536 P.2d 121, 127 (Alaska 1975). Although this power has also been recognized by the Alaska legislature, Alaska Stat. § 14.40.040(1), the Alaska Supreme Court has held that the University has the power to sue and be sued in its own name regardless of this enactment. *Id.* I

6. The dissent correctly notes that the statute does not expressly include the University of Alaska within its coverage. It is incorrect, however, in asserting that the University's corporate status precludes it from being a state agency for the purposes of the statute. *Cf. Alaska Housing Authority v. Dixon*, 496 P.2d 649, 651 (Alaska 1972) (public housing corporation held to be a "state agency" within the meaning of the state administrative procedures act). Nor does *National Aircraft Leasing* prevent finding the University covered under section 44.80.010. While the opinion concluded that the University could not necessarily be considered an *executive* department subject to Alaska Stat. § 44.15.010, *see National Aircraft Leasing*, 536 P.2d at 128, it does not preclude finding the University to be a *state* department or agency that enjoys co-equal status with the executive branch.

7. The case relied on by the defendants, *Alaska v. University of Alaska*, 624 P.2d 807 (Alaska 1981), does not require a contrary conclusion. There the court considered a dispute between the State and the University regarding the use of land granted to the University as part of a federal trust. The court considered the State and the University different entities only to the extent that their interests were antagonistic. *Id.* at 818. Here, the state is seeking to represent the University with at least the acquiescence of the University. Moreover, as a practical matter, the University has no reason to object to the state prosecuting this suit. *See Shevin*, 526 F.2d at 273.

8. Because of our disposition of the standing issue, we need not decide whether the district court abused its discretion by denying leave to amend Alaska's complaint to state a claim based on an alternative theory—that the University of Alaska had assigned its cause of action to the State. Likewise, we do not reach the issue whether the district court erred in ruling on the class certification issue. Because we reverse the final judgment, to decide that issue would be in effect an impermissible interlocutory appeal from the decertification of a class. *See Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 26–27 (9th Cir. 1981).

have found no indication that this power is one that has been granted to any other state "instrumentality."

The University enjoys additional authority as well. For example, the University independently fixes the salaries of its employees, controls and manages its own real estate, personal property, and money, has independent discretion to invest any and all funds or property, and may lease or sell federal land grants without the approval of the State legislature or executive. *National Aircraft Leasing, supra,* 536 P.2d at 123–24. Thus, while the University is, undeniably, an "instrumentality of the State itself," *id.* at 124, it retains "the status of a juristic person," *id.* at 125, a status which in some limited respects is "co-equal rather than subordinate to that of the executive or legislative arms of the government." *Id.* at 128 (footnote omitted).

The majority's reliance on *National Aircraft Leasing,* therefore, is misplaced. There, the issue was whether the State's conditional waiver of sovereign immunity, which denied jury trials to those pressing claims against it, should be extended to suits against the University. The Alaska Supreme Court held only that the University is "in function and character such an arm or instrumentality of the state as to bring it within the scope of those statutes which govern the conditional waiver of sovereign immunity in the state." *National Aircraft Leasing, supra,* 536 P.2d at 123. This simply does not support the majority's conclusion that the State is authorized to assert the University's own legal interests against third parties.

The majority also errs in relying upon Alaska Stat. § 44.80.010. Contrary to the majority's assertion, it provides no clear indication that the State attorney general is permitted to sue on behalf of the University in federal court. I quote the statute's pertinent language.

> If a statute or regulation designates a state department, agency, board, commission or public officer as a necessary or proper party to prosecute or defend an action *in a court of the state,* [then the attorney general is authorized to prosecute or defend the action].

*Id.* (emphasis added). This statute, by its own terms, applies only to "court[s] of the state," and thus does not grant authority to prosecute federal antitrust actions, an area of exclusive federal jurisdiction. 15 U.S.C. § 15; *Freeman v. Bee Machine Co.,* 319 U.S. 448, 451 n.6, 63 S.Ct. 1146, 1148 n.6, 87 L.Ed. 1509 (1942). Focusing on the words "in any court," the majority concludes that the statute allows the State to sue, in its own name, on behalf of the University. *Ante* at 1302 n.5. This language, however, simply suggests that the Attorney General may bring suit "in the name of the State." Alaska Stat. § 44.80.010(3). It does not indicate that the State may present claims on behalf of the University where, as here, the State itself has suffered no injury and has no independent interest in the lawsuit. Moreover, the statute applies only to State departments, agencies, boards, commissions or public officers. The University was established as a corporation under the Alaska constitution, and is defined in Alaska Stat. § 14.40.040 as a state "corporation." It is not a department, agency or office of the other two branches of State government. *National Aircraft Leasing, supra,* 536 P.2d at 128 & n.36. In fact, it is mentioned nowhere in the portion of the Alaska Statutes entitled "State Government," *see* Alaska Stat., Tit. 44, § 44.03.010 *et seq.* Finally, the University is expressly empowered to litigate on its own behalf. *Id.* § 14.40.-040(1).

The statutory provision relied on by the majority is too ambiguous to support its conclusion that the State may file a federal antitrust action on behalf of the University. In my view, the inference the majority draws from this provision is not sufficient to suggest a legislative intent to compromise the considerable degree of constitutional and statutory autonomy enjoyed by the University. Therefore, I would affirm the district court on this issue.