**UNITED STATES of America ex rel.
NORTON SOUND HEALTH COR-
PORATION, Plaintiffs–Appellants,**

**v.**

**BERING STRAIT SCHOOL DISTRICT,
Defendant–Appellee.**

No. 96–35827.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1997.

Decided March 12, 1998.

Edward Himmelfarb, Washington, DC, for plaintiff-appellant.

Saul Friedman, Anchorage, Alaska, for defendant-appellee.

Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* Senior District Judge.

Opinion by Judge SCHWARZER; Dissent by Judge O'SCANNLAIN.

SCHWARZER, Senior District Judge:

We must decide whether the Bering Strait School District (the "District"), a local school district created under Alaska law, is a "State" within the meaning of the Indian Health Care Improvement Act, 25 U.S.C. § 1621e (the "Act"), for the purpose of qualifying for the exemption from having to make reimbursement to the federal government for health services provided to Alaska Natives.

I.

This action was brought by the United States under section 206 of the Act, codified at 25 U.S.C. § 1621e(a) (West Supp.1997), for reimbursement of the reasonable expenses incurred by both the United States and Norton Sound Health Corporation in providing free health care to the District's Alaska Native employees. The District moved for summary judgment contending that it is an "arm of the state" and therefore entitled to the exemption under the Act for "any State." A "State" is required to make reimbursement only for certain medical services not involved here. See 25 U.S.C. § 1621e(b) (West Supp. 1997). The district court granted the motion and, after the United States dismissed the only other claim pending, entered judgment for the district.[1] We have jurisdiction under 28 U.S.C. § 1291 and reverse.

II.

Congress enacted the Indian Health Care Improvement Act, Pub.L. No. 94–437, 90

Stat. 1400 (1976), having found that "[f]ederal health services to maintain and improve the health of the Indians are consonant with and required by the Federal Government's historical and unique legal relationship with, and resulting responsibility to, the American Indian people." 25 U.S.C. § 1601(a) (West 1983). Congress declared that "it is the policy of this Nation, in fulfillment of its special responsibilities and legal obligation to the American Indian people, to meet the national goal of providing the highest possible health status to Indians and to provide existing Indian health services with all resources necessary to effect that policy." Id. § 1602(a) (West Supp.1997). The purpose of the Act was to ensure sufficient resources to provide Indians with proper health care and adequate funding to construct modern hospitals and other health care facilities. However, in adopting the Act, "Congress did not view the federal government as the exclusive provider of Indian health care benefits"; it considered that to be a "shared responsibility" with the states. McNabb v. Bowen, 829 F.2d 787, 792 (9th Cir.1987).

In 1988, recognizing that health care was available to some Indians through employers who provided health insurance plans to their employees, Congress added a section 206 to the Act, giving the United States the right to recover the "reasonable expenses incurred by the Secretary in providing health services" to eligible Indians and Alaska Natives. The United States was authorized to recover from the non-government provider to the same extent that that provider would be eligible for reimbursement from the United States had health care services been provided by the nongovernmental provider and the individual had been required to pay and had in fact paid. Indian Health Care Amendments of 1988, Pub.L. No. 100–713, 102 Stat. 4811 (1988) codified at 25 U.S.C. § 1621e(a).[2]

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. The parties have stipulated that the first claim dismissed without prejudice will never be pursued in any federal court.

2. Section 1621e(a) provides in relevant part:
   [T]he United States ... shall have the right to recover the reasonable expenses incurred by

the Secretary ... in providing health services ... to any individual to the same extent that such individual, or any nongovernmental provider of such services, would be eligible to receive reimbursement ... if (1) such service had been provided by a nongovernmental provider, and (2) such individual had been required to pay such expenses and did pay such expenses.
25 U.S.C. § 1621e(a).

As a result, a health insurer is now required to reimburse the United States for health care provided by the United States to Indians and Alaska Natives who were covered by a health insurance plan, just as the United States would reimburse non-governmental providers, even though the United States did not itself charge for its services. Congress preempted all provisions of state and local law, and all contract provisions, that would "prevent or hinder" recovery of reimbursement. *See* 25 U.S.C. § 1621e(c). The only exception was that the right of the United States to recover from "any State, or any political subdivision of a State" was limited to treated conditions covered under workers' compensation laws or a no-fault automobile insurance program. 25 U.S.C. § 1621e(b).[3]

Congress later amended section 206 when it adopted the Indian Health Amendments of 1992, Pub.L. No. 102–573, 106 Stat. 4551 (1992). The amendment deleted from 25 U.S.C. § 1621e(b) the words "or any political subdivision of a state." As a result, only an entity qualifying as "any State" enjoys the exemption from liability for reimbursement under the Act. The issue before us is whether the District qualifies as "any State."

### III.

The District provides health insurance to its employees, including Alaska Native employees, through an administered self-insurance plan. Alaska Natives, however, are also eligible for comprehensive medical care free of charge provided by Norton Sound Health Corporation ("Norton") under the Alaska Tribal Health Compact and Annual Funding Agreement, pursuant to Title III of the Indian Self–Determination and Education Assistance Act, Pub.L. No. 93–638, as added, Pub.L. No. 100–472, 102 Stat. 2296 (1988). The United States brought this action against the District on behalf of Norton for reimbursement of the reasonable expenses incurred by both the United States and Nor-

ton in providing free health care to Alaska Native employees of the District.

The District is a Regional Educational Attendance Area ("REAA") located near Nome, Alaska, in the "unorganized borough."[4] By statute an REAA is a school district operated on an area wide basis under the management and control of a regional school board. Its members are elected by qualified voters of the communities served by the REAA. Alaska Stat. § 14.08.041(a) and (b) (Michie 1997). REAAs have the following powers: sue and be sued; contract for services and supplies; establish their own fiscal procedures; hire and compensate employees; adopt regulations governing organization, policies, and procedures for the operation of schools; maintain, operate, discontinue and combine schools subject to approval of the State Department of Education; own land and buildings used in relation to the schools; and provide rental housing to teachers. Alaska Stat. § 14.08.101. REAAs do not have taxing power. The District receives 82 percent of its income from the state, the balance coming from the federal government and local sources.

In granting summary judgment for the District, the district court looked for guidance to Eleventh Amendment case law while acknowledging, correctly, that the Eleventh Amendment is not at issue. It concluded that because the Alaska legislature oversees and controls REAAs, and provides substantially all of the money necessary to operate them, the District is an "arm of the state" and therefore exempt from the reimbursement requirements of the Act.

The Eleventh Amendment analogy is inapposite. The issue here is one of statutory interpretation: What did Congress intend when it used the phrase "any State" (not defined in the Act) to limit the reimbursement obligation? It is unlikely that it intended the term to be defined in terms of

---

3. Section 1621e(b) provides in relevant part:
   Subsection (a) of this section shall provide a right of recovery against *any State* only if the injury, illness, or disability for which health services were provided is covered under (1) workers' compensation laws, or (2) a no-fault automobile accident insurance program.
   25 U.S.C. § 1621e(b) (emphasis added).

4. The Constitution of the State of Alaska divides the state into organized boroughs and the "unorganized borough." *See* Alaska Const. art. X, § 3. The "unorganized borough" is the area of the state outside organized boroughs. *See* Alaska Stat. § 29.03.010 (Michie 1997).

Eleventh Amendment immunity analysis for several reasons: first, the Eleventh Amendment does not apply to suits by the government against states; second, as originally drafted, the exemption also included "political subdivisions" which enjoy no Eleventh Amendment immunity, *see Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 62, 115 S.Ct. 394, 411, 130 L.Ed.2d 245 (1994); third, the states' exemption from reimbursement liability is only partial; and fourth, there is no evidence that Congress meant to subordinate its claim for reimbursement to protection of the "State's purse." *Id.* at 48, 115 S.Ct. at 404.

■■■ The application of the exemption under the Act turns not on whether an entity is an "arm of the State" but whether it is a "State." The plain meaning of the word "State" does not include school district or regional educational attendance area. *See, e.g.*, Webster's Third New International Dictionary 2228 (16th ed.1971) ("one of the bodies politic or component units in a federal system that is more or less independent and sovereign over internal affairs but forms with the other units a sovereign nation (the United States of America) . . . a territorial unit in which the general body of law is separate and distinct from the law of any other territorial unit"). The District relies on our decision in *Wash. State Dept. of Transp. v. Natural Gas Co.*, 59 F.3d 793 (9th Cir.1995), in which we held that the Washington State Department of Transportation qualified as a "State" under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607. We held that "[t]he organized government of a state includes state administrative departments and agencies . . . [including] '[a] department, commission, board, committee or body of any form operating as an instrumentality of the state government.'" 59 F.3d at 800 (quoting

Ballentine's Law Dictionary 1210 (3d ed.1969)). We expressly distinguished, however, "[a] municipality, a local government with authority over a limited area, [as] . . . a different type of government unit than a state-wide agency that is part of the organized government of the state itself." *Id.* at n. 5. In short, a local government unit, though established under state law, funded by the state, and ultimately under state control, with jurisdiction over only a limited area, is not a "State."

Although federal law controls the interpretation of the Act, we note that the Alaska Supreme Court has observed that "[t]he REAA's are not simply successors to the [Alaska State Operated School System]; they are independent entities which have been given broad powers to run their individual school districts as they see fit." *Northwest Arctic Reg'l Educ. Attendance Area v. Alaska Public Serv. Employees, Local 71*, 591 P.2d 1292, 1298 (Alaska 1979), *overruled on other grounds, Alaska Commercial Fishing & Agric. Bank v. O/S Alaska Coast*, 715 P.2d 707, 709 n. 5 (Alaska 1986).[5]

We therefore conclude that the School District does not qualify as a "State" under the Act.

The judgment is REVERSED.

O'SCANNLAIN, Circuit Judge, dissenting.

I would affirm the judgment of the district court. Our court's decision in *Washington State Department of Transportation v. Washington Natural Gas Co.*, 59 F.3d 793 (9th Cir.1995), compels the conclusion that the Bering Strait School District ("BSSD") is an instrumentality of the "State" for purposes of the Indian Health Care Improvement Act, 25 U.S.C. § 1601, *et seq.* BSSD is

---

5. The dissent cites *Alaska v. Chevron Chemical Co.*, 669 F.2d 1299 (9th Cir.1982), in which we held that Alaska courts would categorize the University of Alaska as a state agency for purposes of permitting the state Attorney General to bring an antitrust action on its behalf. We relied on *University of Alaska v. National Aircraft Leasing, Ltd.*, 536 P.2d 121 (Alaska 1975), in which the Alaska Supreme Court drew a distinction between the University and educational institutions created to meet the needs of local areas:

> In its constitutional status it stands as the single governmental entity which was specifically created by the people to meet the state-wide need for a public institution of higher education. In this light, the University must be regarded as uniquely an instrumentality of the state itself. Unlike other public educational institutions created to meet the needs of local areas, it exists constitutionally to act for the benefit of the state and public generally.
> *Id.* at 124–25.

therefore exempt from having to reimburse the federal government for health services provided to its Alaska Native employees. *See* 25 U.S.C. § 1621e(b).

As the majority acknowledges, we held in *Washington Natural Gas* that "[t]he organized government of a state includes state administrative departments and agencies .... [including] '[a] department, commission, board, committee, or body of any form operating as an instrumentality of the state government.'" 59 F.3d at 800 (quoting Ballentine's Law Dictionary 1210 (3d ed.1969)). Therefore, under *Washington Natural Gas,* the relevant question is whether BSSD is a body operating as an instrumentality of the Alaskan government.

The majority's principal justification for its conclusion that BSSD is not an instrumentality of Alaska is that BSSD has "jurisdiction over only a limited area." [1] *See* Majority Opinion at 2295. However, our determination as to whether a government entity qualifies as an instrumentality of either a state or the federal government should not turn solely on the geographical dimension over which the government entity exercises jurisdiction. Is the Ninth Circuit not an instrumentality of the federal government, notwithstanding the fact that it comprises only 9 of the 50 states?

Instead of focusing on geography, our inquiry as to whether a government entity qualifies as a state agency should focus, as *Washington Natural Gas* suggests, on *the amount of control* the state wields over that entity. Alaska exercises a high degree of control over BSSD, which is located in its only unorganized borough. The Alaskan Constitution provides:

The legislature shall provide for the performance of services it deems necessary or advisable in unorganized boroughs, allowing for maximum local participation and responsibility. It may exercise any power or function in an unorganized borough which the assembly may exercise in an organized borough.

Alaska Const. art. X, § 6.

In Alaska's organized boroughs, the borough assembly provides the money necessary to operate the school districts. *See* AS 14.12.020(c). However, in the unorganized borough, the state legislature is required to "provide the state money necessary to maintain and operate" the schools. *Id.* Furthermore, because BSSD is not an organized borough or a city, it does not have the power to tax. *See* Alaska Const. art. X, § 2 ("The State may delegate taxing powers to organized boroughs and cities only."). BSSD therefore receives 82% of its income from the state.[2] Consequently, Alaska would ultimately shoulder the brunt of any judgment entered against BSSD.

Our decision in *Alaska v. Chevron Chemical Co.,* 669 F.2d 1299 (9th Cir.1982), supports the view that the BSSD is an instrumentality of the state of Alaska. In *Chevron,* we held that the University of Alaska is "a state department or agency that enjoys co-equal status with the executive branch." *Id.* at 1303 n. 6. We reached this conclusion despite the fact that the University of Alaska is a corporate entity, has the power to sue and be sued, "independently fixes the salaries of its employees, controls and manages its own real estate, personal property, and money, has independent discretion to invest any and all funds or property, and may lease or sell federal land grants without the approval of the State legislature or executive." [3] *Id.* at 1303–04 (Wallace, J., dissenting).

In light of these considerations, I believe that Alaska exercises sufficient control over BSSD to compel the conclusion that BSSD is a "state agency" as that term was defined by

---

1. In *Washington Natural Gas,* we stated that "[a] municipality, a local government with authority over a limited area, is a different type of government than a state-wide agency that is part of the organized government of the state itself." *Id.* at 800 n. 5. Although it follows from this statement that a municipality is not a state agency, it assuredly does not follow that *all* government entities "with authority over a limited area" are not state agencies. *Id.*

2. Of the remaining 18%, 13% comes from the federal government, while only 5% comes from local sources.

3. In contrast to the University of Alaska, the BSSD is not a corporate entity and does not hold title to any real property.

our court in *Washington Natural Gas.* Consequently, I disagree with the majority's holding that BSSD is not exempt under the Indian Health Care Improvement Act from having to reimburse the federal government for health services provided to its Alaska Native employees.

I respectfully dissent.